505 So.2d 1096 (1987)
CITY OF NEW PORT RICHEY, Appellant,
v.
HILLSBOROUGH COUNTY POLICE BENEVOLENT ASSOCIATION, INC., Appellee.
No. 86-70.
District Court of Appeal of Florida, Second District.
March 4, 1987.
Rehearing Denied April 22, 1987.
Peter D. Hooper, St. Petersburg, for appellant.
Gene "Hal" Johnson of Florida Police Benev. Ass'n, Inc., Tallahassee, for appellee.
CAMPBELL, Acting Chief Judge.
The issue on appeal is whether appellant, City of New Port Richey ("City"), improperly failed to bargain with appellee, Hillsborough County Police Benevolent Association, Inc. ("HCPBA"), before the City reduced its percentage of contribution to the Police Pension Fund.
Although the reduction did not affect the actuarial soundness of the plan or detrimentally affect either employee benefits or employee contributions, the Public Employees *1097 Relations Commission (PERC) found that the City's action was an unfair labor practice (section 447.501, Florida Statutes (1983)), and ordered the City to negotiate with HCPBA. The City appeals. We reverse.
The City maintains: (1) Sections 112.60, 166 and 447.209, Florida Statutes (1983) authorized the City to unilaterally set pension plan funding so long as the plan remained actuarially sound; (2) The reduction had no substantial impact on pension benefits or on required employee contributions to the plan; and (3) Under the management rights and zipper clauses of the collective bargaining agreement, HCPBA waived its right to bargain over the reduction.
After careful consideration of these arguments, we conclude that even though the City reduced the amount it contributed to the plan, that reduction had no impact on the employees' pension benefits or required contributions, and the City was not, therefore, required to bargain with HCPBA before it implemented the reduction.
It is well established that public employers are not only required to bargain over wages, hours and terms and conditions of employment, (section 447.309(1), Florida Statutes (1983)), but also over any other issues that may have an impact on wages, hours or terms and conditions of employment. Hillsborough Classroom Teachers Association, Inc. v. School Board of Hillsborough County, 423 So.2d 969, 970 (Fla. 1st DCA 1983). In the absence of a waiver, an emergency or an impasse action (section 447.403, Florida Statutes (1983)), a public employer who unilaterally alters any of these mandatory subjects of collective bargaining commits an unfair labor practice. § 447.501(1)(a) and (c), Fla. Stat. (1983); Central Florida Professional Fire Fighters, Local 2057 v. Board of County Commissioners of Orange County, 9 FPER § 14372, Nov. 14, 1983. This is true even if the altered term or condition of employment is not expressly contained in the collective bargaining agreement, but is impliedly included as part of the established status quo. School Board of Orange County v. Palowitch, 367 So.2d 730, 732 (Fla. 4th DCA 1979).
The evidence at trial revealed that the City, in its capacity as a public employer, entered into a collective bargaining agreement with HCPBA, the registered employee organization that had been certified to bargain on behalf of patrol officers, police sergeants, detectives and dispatchers for the City's police department. At the time that the collective bargaining agreement was entered, the parties had not bargained over the issue of retirement or pension benefits. In February of 1985, the City Council voted to alter the City's rate of contribution to the Police Pension Plan. HCPBA requested the City to negotiate the proposed change on the grounds that it directly affected terms and conditions of employment and, as such, was subject to negotiation. § 447.309. The City refused to negotiate and enacted the change. Prior to the change, the plan was funded by fixed rate contributions, the City's at 13.95 percent and the employees' at 4.5 percent.
The new ordinance provided that in those years when, for actuarial reasons, the City was required to contribute less than 4.5 percent of total payroll to the plan, the employees' contribution would be decreased to equal the percentage that the City contributed. In those years that the City's required contribution exceeded 4.5 percent, however, the employees' contribution would remain at 4.5 percent. As a result of the ordinance, the City reduced its contribution from the previous rate of 13.95 percent to 3.43 percent. The employees' rate of contribution was reduced from 4.5 percent to 3.4 percent. The parties stipulated that this decrease in contributions did not decrease current pension benefits or increase current pension contributions required of bargaining unit employees. Despite actuarial reports of soundness, the city manager had begun funding the plan at 13.95 percent at its inception in order to eliminate an unfunded liability that existed because the plan was new.
An expert actuary testified that the reduced funding had no effect on any current benefits payable under the plan. Even *1098 though the 13.95 percent contribution had caused a surplus to build up in the system, he explained that the surplus could not properly be considered a reserve for improvement of future benefits because the plan did not provide for such a result. Rather, he said, the succeeding years' contributions would be reduced until the point of stabilization was reached. In response to the City's request under section 112.63, Florida Statutes (1983), the Department of Administration, Division of Retirement, issued a letter that stated, "The proposed ordinances do not appear to change benefits, therefore, no impact statement will be required."
PERC rendered an order on December 19, 1985, finding that the City had committed an unfair labor practice when it unilaterally reduced the percentage it contributed to the City Police Officers' Pension Fund. It is from that final order that the City now appeals.
Since an employer is required to bargain over matters that concern employees' wages, hours or terms and conditions of employment, the first question is whether the City, by reducing its contribution to the plan, directly affected or had an impact upon the employees' wages, hours or terms and conditions of employment. While it has been held that public employees have a right to bargain collectively as to retirement benefits, City of Tallahassee v. Public Employees Relations Commission, 393 So.2d 1147, 1150 (Fla. 1st DCA 1981), the parties here stipulated that the City's reduced contributions would not cause either a decrease in current employees' benefits or an increase in their required contributions to the plan. They also stipulated that, even with the reduction, the plan would remain actuarially sound.
We find it significant that, while the City's contribution may be increased or decreased, the employees' contribution may only be decreased. If the City is required to contribute over 4.5 percent, the employees' contribution does not increase accordingly, but remains at 4.5 percent. On the other hand, if the City's contribution is decreased below 4.5 percent, the employees' contribution must likewise decrease. The City's contribution, therefore, ensures the plan's actuarial soundness. The employees will not be required to pay a greater percentage than the City is required to pay, nor will they be required to contribute more than they contributed prior to the amendment to the plan.
Additionally, while we recognize that public employees are entitled to the same right to bargain as private employees, we are mindful of the fact that the City, as a public employer, has a responsibility not only to its employees, but also to the taxpayers it serves. The City's duty is to provide services to those taxpayers as inexpensively as possible. Unlike a corporation that is responsible to a limited number of stockholders to produce a profit if possible, a public employer is responsible to the public and to the community as a whole to operate in the public interest as economically as possible. Where, as here, the new provision does not have an impact on the City employees' wages, hours or terms and conditions of employment, and the pension plan is actuarially sound despite the reduction, we do not believe the public interest requires the City to bargain. We hasten to add that we believe this case presents an unusual situation, and one not likely to be repeated, since the plan had initially been over-funded due to a prior city manager's early concerns during the initial phases of the plan that the plan might fail despite reports that it was actuarially sound.
We hold, therefore, that in this instance the public employer is not required to bargain over a change in its contribution to a pension plan where that change does not have any impact upon the employees' benefits or contributions to the plan or the actuarial soundness of the plan.
In so holding, we emphasize the fact that the so-called "change" here was not a "change" in the sense that it affected the employees' rights and obligations under the plan. We are presented with the anomalous situation in which a change is made, but no impact occurs. In that respect, the case before us must be distinguished from School Board of Indian River County v. *1099 Indian River County Education Association, 373 So.2d 412 (Fla. 4th DCA 1979). There, the court indicated that bargaining would be required if there was any change that affected a mandatory item of bargaining, no matter how insignificant. We find "change" to be the key word. There simply was no change here that affected the employees.
We, therefore, reverse PERC's order. Because of our determination of these issues, we need not address the other two issues.
SCHOONOVER and FRANK, JJ., concur.