475 So.2d 1322 (1985)
CITY OF PALM BAY, Appellant/Cross-Appellee,
v.
Donald J. BAUMAN, et al., Appellees/Cross-Appellants.
Nos. 84-1026, 84-1715.
District Court of Appeal of Florida, Fifth District.
September 26, 1985.
*1323 Leonard A. Carson and John D.C. Newton, II of Carson & Linn, P.A., Tallahassee, and Nicholas F. Tsamoutales, Palm Bay, for appellant/cross-appellee.
William H. Harrell, Kerry I. Evander of Reinman, Harrell, Silberhorn, Moule & Graham, Melbourne, for appellees/cross-appellants.
ORFINGER, Judge.
The City of Palm Bay appeals a final judgment permanently enjoining it from requiring its police officers and fire fighters to give urine specimens at random and unspecified times for the purpose of determining the presence of controlled substances, unless probable cause exists to believe the employee has been using a controlled substance, or except during regularly scheduled periodic physical examinations. With modifications, we affirm.
The factual background and legal analysis are succinctly set forth in the trial court's order which is set forth in pertinent part.
This action was tried before the Court. On the evidence presented, the Court finds as follows:
1. POLICE DEPARTMENT:
(a) On February 24, 1984, the following notice was addressed "TO: ALL SWORN OFFICERS" and signed by City Manager, ROBERT G. MATTE, and by Chief of Police, CHARLES R. SIMMONS:
"The City's Personnel Policies and Procedures prohibit possession, consumption or being under the influence of drugs or intoxicating substances while on duty because sworn police officers are subject to call-out on a twenty-four (24) hour basis. Consumption of non-prescribed drugs or other illegal substance at any time is strictly prohibited. If a police officer has consumed alcohol prior to being called to duty, he/she shall notify the shift supervisor of that fact."
"The City is actively taking steps to enforce the above policy. Urine samples may be required from police officers on a random basis. Police officers found to have consumed non-prescribed drugs or other illegal substances will be subject to discipline or discharge."
(b) All members of the Police Department were then instructed to submit to urine tests to determine if marijuana had been used. The police officers were told that if they refused to submit to urine testing, they would be subject to discipline up to and including termination. In addition, the refuser would be reported to the State Police Standards Commission for refusing to obey a lawful order... .
* * * * * *
2. FIRE DEPARTMENT:
(a) Prior to June 1983 two (2) fire fighters told David Green, Fire Chief of the City of Palm Bay, that they had used marijuana. These individuals were not terminated, but were ordered to counseling.
(b) In June 1983, pursuant to a recommendation made by the City personnel director and implemented by the fire chief, all fire fighters were ordered to take annual physicals. One of the reasons for the physicals was to test urine specimens for evidence of past use of marijuana, although this was not disclosed to the fire fighters (except one was told during the testing). This testing revealed two "positives". These individuals were not terminated, but ordered to counseling.
(c) On or just before October 18, 1983, the City Manager, ROBERT G. MATTE, addressed the following notice to all City employees:
"The City's Personnel Policies and Procedures provide  the possession, consumption or being under the influence of drugs or intoxicating beverage *1324 while on duty is considered a major offense. Violations may entail dismissal. The City will strictly apply the disciplinary measures provided."
"The proviso relating the offense to `on duty' status must be judiciously evaluated. Those subject to call during off duty hours, which applies to most personnel in the City, are expected to be in a fit condition to respond and effectively perform assigned duties when they are required to report."
* * * * * *
(e) In February 1984, the City Manager ordered all fire fighters to submit to urine testing. In fact, Chief Green was told by the City Manager to advise the fire fighters (and he did so advise them) that if they did not consent to the testing, they would be terminated. The tests revealed three (3) positives: .. .
* * * * * *
4. POLICY CONSIDERATIONS:
(a) Fire fighters must be possessed of all their physical and mental faculties on the job. Their safety and the safety of property, their fellow fire fighters, and the public is at stake.
(b) Police officers use weapons, drive vehicles and make instant judgments involving life and death. They, too, must be possessed of all their normal faculties. In addition, they are sworn to enforce the law and must have credibility if public confidence and respect is to be maintained. Known use of illegal substances would undermine that confidence and respect.
(c) Public employees are legitimately subject to more regulation of their activities than the general populace.
(d) A non-probationary municipal employee has a constitutionally protected property interest in such employment entitling him to protection against unjust and unlawful job deprivation. See, Farmer v. City of Fort Lauderdale, 427 So.2d 187 (Fla. 1983).
5. CONSTITUTIONAL ISSUES:
(a) Self Incrimination (5th and 14th Amendments to U.S. Constitution and Art. 1, Sec. 9, Fla. Const.). Since this privilege applies only to testimonial communications, it is not a bar to the action complained of here.
(b) Search and Seizure (4th Amendment to U.S. Constitution and Art. 1, Sec. 12, Fla. Const.).
(1) This case does not involve urine testing conducted as a part of annual or other specified physical examination delineated in City policy. Certainly, municipal police officers and fire fighters must expect to meet required minimum standards of physical condition in order to be hired and retained. Physical examinations conducted to insure that those standards are met are to be reasonably expected even though urine testing is a part of those examinations. Likewise, this case does not involve urine testing either alone or as a part of other physical examinations required by virtue of a delineated City policy invoked on evidence of suspected diminished capacity. Here, the City states that all fire fighters and police officers must submit to urine testing or be subject to discipline up to and including discharge.
(2) A citizen has a reasonable expectation of privacy in the discharge and disposition of his urine. McDonell v. Hunter, 612 Fed. Supp. 1122 (S.D.Iowa 1984) [affirmed, 746 F.2d 785 (8th Cir. 1984)]. At the same time, police officers and fire fighters, because of the nature of their jobs, must reasonably expect their employer to have, and to demonstrate, legitimate concern that their ability to discharge their job responsibilities is not compromised by the use of controlled substances.
(3) The proposed compelled production and surrender of the urine for testing, under the evidence presented here, constitutes a search and seizure within the purview of the law. But, the City argues, by signing the "Notice", consent was given to the search. This argument is without substance for it is abundantly *1325 clear from the evidence that such signatures were procured under threat of disciplinary action. Consent cannot be inferred from an act so manifestly coerced.
(4) The next question is whether such testing, considered in the light of its scope, nature, incidence and effect, is unreasonable when the immediate end sought is weighed against the private right affected. See, Oliver v. United States, 239 F.2d 818, Cert. Dismd. 353 U.S. 952, 1 L.Ed.2d 858, 77 S.Ct. 865 (1957). As in McDonnell [sic] [McDonell], supra, Palm Bay's "policy" does not identify the person, or persons, by name or position, who are authorized to require employees to provide a urine sample. The "policy" does not articulate any standards for its implementation and no separate written standards have been promulgated. Reasonable suspicion plays no part  the testing is to be all encompassing. Yet, as noted above, the Chief of Police has received no information, and has no independent knowledge, that any member of the Palm Bay Police Department has used marijuana. The incidence of known marijuana use among fire fighters is set forth above. The total known involvement on and off the job, even after urine testing, is less than six (6) people. While not suggesting that this figure is insignificant, it is hardly a legal springboard for the trip the City now seeks to take. Without a scintilla of suspicion directed toward them, many dedicated fire fighters and police officers are told, in effect, to submit to such testing and prove themselves innocent, or suffer disciplinary action. When the immediate end sought is weighed against the private right affected, the proposed search and seizure is constitutionally unreasonable.
(5) The Court finds urine testing not performed as part of physical examinations required annually or at other specified career times by City personnel policy, and designed to determine the presence of controlled substances, may constitutionally be required only on the basis of probable cause, to wit: reasonable suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in believing the police officer or fire fighter to have been on the job using, or after having recently used, a controlled substance. The person, or persons, authorized to require such urine testing should be designated in writing by the City Manager.
6. CONCLUSION:
The Court, therefore, finds that the urine testing required by the City herein constitutes an unreasonable search and seizure, violative of the 4th Amendment to the U.S. Constitution and Art. 1, Sec. 12, Fla. Const. and should be enjoined.
Incorporating these findings, the trial court entered a final judgment which provided:
* * * * * *
That except for urine testing performed as a part of physical examinations required by City Personnel Policy for initial employment, or annually, or at other designated career times, the City of Palm Bay is hereby permanently enjoined from requiring Plaintiffs to give urine specimens for the purpose of determining the presence of controlled substances unless probable cause exists, to-wit: reasonable suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in believing the police officer or fire fighter to have been on the job using, or after having recently used, a controlled substance. The person or persons, authorized to require such urine specimens should be designated by the City Personnel Policy. Until such policy is implemented, such person, or persons, shall be designated in writing by the City Manager.
Upon review of the final judgment we find that it imposes too severe a standard when it requires the City to have "probable cause" to believe that the policeman or fire fighter has been using a controlled substance. The federal courts which have considered this and analagous issues have held that the "reasonable suspicion *1326 standard" (something less than probable cause) is the basis upon which this type of search can be justified. The "reasonable suspicion" test requires that to justify this intrusion, officials must point to specific objective facts and rational inferences that they are entitled to draw from these facts in the light of their experience. Security and Law Enforcement Employees, District Counsel 82 v. Carey, 737 F.2d 187, 205 (2d Cir.1984); Hunter v. Auger, 672 F.2d 668 (8th Cir.1982); Division 241 Amalgamated Transit Union v. Suscy, 538 F.2d 1264, 1267 (7th Cir.1976), cert. denied, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976). Reasonable suspicion is also referred to as founded suspicion, which this court described in State v. Hunt, 391 So.2d 760 (Fla. 5th DCA 1980) as:
something less than probable cause, but something more than a mere suspicion. It is a reasonable suspicion that requires further investigation. Lewis v. State, 337 So.2d 1031 (Fla.2d DCA 1976); State v. Othen, 300 So.2d 732 (Fla. 2d DCA 1974). It is a suspicion which has some factual foundation in the surrounding circumstances observed by the officer, when those situations are interpreted in light of the officer's knowledge. State v. Spurling, 385 So.2d 672 (Fla. 2d DCA 1980); State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978).
Id. at 761. We see no reason for imposing a stricter standard than that imposed by the federal courts,[1] so we modify the final judgment in that respect.
Additionally, the judgment limits the City's right to require such testing only when it appears that the employee has "been on the job using, or after having recently used" a controlled substance. This is too narrow a restriction. The City has the right to adopt a policy which prohibits police officers and fire fighters from using controlled substances at any time while they are so employed, whether such use is on or off the job. The nature of a police officer's or fire fighter's duties involves so much potential danger to both the employee and to the general public as to give the City legitimate concern that these employees not be users of controlled substances.
Their work requires and the safety of the public demands complete mental and physical functioning of these officers. There is competent, unrebutted evidence in the record that marijuana causes severe long and short term physical, mental and psychological effects; that the length and severity of the effects of that drug cannot be predicted because they depend on the physical make-up of the individual and the potency of the substance. However, while the effects may last for hours or for days, the effects are certain, and can include impairment of physical function, auditory and visual perception changes. Other controlled substances produce similar effects. Moreover, as pointed out by the trial court, police officers who are sworn to enforce the laws lose credibility and public confidence if they violate the very laws they are sworn to enforce. The City therefore has a right to insist that its law enforcers not be law breakers. Therefore, the final judgment is also modified in this respect.
Appellant's reliance on Security and Law Enforcement Employees, District Counsel 82 v. Carey, 737 F.2d 187 (2d Cir.1984) and Division 241 Amalgamated Transit Union v. Suscy, 538 F.2d 1264 (7th Cir.1976), cert. denied, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976) as supporting the City's policy, is misplaced. Carey involved strip searches of prison employees (which appellant contends is more intrusive than taking urine samples), but the court there upheld the strip searches only where the prison administrator had a reasonable suspicion based on objective facts and rational inferences that a specific employee was bringing contraband into the prison. Random searches of all employees were specifically disapproved as unreasonable *1327 searches. 737 F.2d at 209. In Suscy, employees of the Chicago Transit Authority were required to undergo blood and urine testing when they were involved in "any serious accident" or suspected of being intoxicated or under the influence of narcotics. The court approved this requirement as reasonable under the Fourth Amendment. Again, no random testing was involved. We therefore approve the trial court's findings and final judgment, as modified herein.
Appellant further asserts that the trial court was not authorized to award attorney's fees to the plaintiffs. Appellant says in its brief:
According to the verified complaint this was an action for injunctive and declaratory relief. Florida law establishes the right to both forms of relief. § 26.012(3) and 86.201, Fla. Stat. (1983). The appellees sought relief in a circuit court of the State of Florida. The complaint does not request an award of attorney's fees. The complaint does not mention any federal statute, including Title 42, United States Code, Section 1988. Yet some three months after the judgment the appellees relied upon that statute to seek an award of attorney's fees. The court improperly granted fees.
While we agree that the better practice would have been to allege that the action was based on 42 U.S.C. § 1983, we agree with the trial court that there was no confusion on this score. In unsuccessfully moving to dismiss the complaint, the appellant expressly recognized that six of the counts were predicated on § 1983 and contended that no cause of action was stated under that section. Appellant also argues that the motion for attorney's fees was untimely because it was not made until after final judgment was entered and there was no prayer for such fees in the original complaint.
42 U.S.C. § 1988 provides that in any action or proceeding to enforce a provision of § 1983, the court, in its discretion, may allow the prevailing party (other than the United States) a reasonable attorney's fee as part of the costs. The federal courts have held that there is no jurisdictional time limit under the federal rules for the filing of a motion for attorney's fees under section 1988. See, e.g., Brown v. City of Palmetto, Georgia, 681 F.2d 1325 (11th Cir.1982).
Court costs are generally not a part of the damages claimed nor of the relief requested and consequently need not be specifically pleaded. State ex rel. Royal Insurance Company, Inc. v. Barrs, 87 Fla. 168, 99 So. 668 (1924). Neither is there any statute or rule of court in Florida which specifies the time within which the motion for taxation of costs must be filed. It has been held that a motion to tax costs may be filed at various times, before or after judgment, and even after an appeal of the judgment has been taken, so long as the motion is filed within a reasonable time after the appeal is concluded. Roberts v. Askew, 260 So.2d 492 (Fla. 1972). This court has recognized that attorney's fees may be properly awarded as court costs when so provided by statute. Allen v. Estate of Dutton, 384 So.2d 171 (Fla. 5th DCA), review denied, 392 So.2d 1373 (Fla. 1980). The request for attorney's fees here came as no surprise to appellant because the trial court, in the final judgment, specifically reserved jurisdiction to consider the question of such fees. The motion to assess fees was not untimely when it was filed three months after entry of the judgment, and we cannot say that the trial court abused its discretion in considering it.
We find no merit in the issues raised by appellees on their cross-appeal. Except as modified herein, the final judgment and the order awarding attorney's fees are
AFFIRMED.
DAUKSCH J., and KIRKWOOD, L.R., Associate Judge, concur.
NOTES
[1] Article I, Section 12 of the Florida Constitution, dealing with seraches and seizures, was amended in 1982 to provide that the rights secured by that section "shall be construed in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court."