SHIVERS, Judge.
Appellant Florida Department of Law Enforcement (FDLE) appeals a final order of the Public Employees Relations Commission (Commission) adopting the Hearing Officer’s recommendation to reverse FDLE’s termination of appellee Hodges and to reinstate her with back pay, costs, and attorney’s fees. We affirm.
The record on appeal indicates that Hodges was a career service employee with FDLE for ten years prior to her termination. Having begun work as a Crime Input Information Technician, she was promoted in 1981 to the position of Special Agent, and worked out of FDLE’s Broward County office. Up until 1985, Hodges’ work evaluations reflected ratings of satisfactory or above satisfactory, and there was evidence that she was highly respected at FDLE for her undercover work as well as her ability to remain “cool” under stressful situations. Mike Minto, who was Hodges’ supervisor until 1985, stated that he had no problems with her.
In 1985, Minto was replaced by Harry Solowsky as Hodges’ supervisor. Beginning that year, Hodges began to feel that she was receiving unfair treatment from Solowsky, and that he was watching her more closely and checking on her whereabouts more often than the other agents under his supervision. Hodges also apparently had a dispute with Solowsky over an assignment, and Solowsky had a philosophical difference with Hodges over her investigatory techniques. In March 1986, Solowsky evaluated Hodges at “achieves performance standards” and “below performance standards” in the category “Dealing With Others,” which Hodges felt was too low in light of her prior above satisfactory ratings. In early 1985, Hodges began seeing a psychiatrist (Dr. DeEle-jalde) due to the situation at work, and complained of discrimination by her supervisors and increased stress as a result thereof. The doctor diagnosed Hodges as having difficulty sleeping, being irritable, and having a depressive reaction, but saw no evidence of drug or alcohol problems or organic illnesses and did not consider her depression severe enough to interfere with her work performance.
One year later, a series of events took place which led to FDLE’s termination of Hodges. On April 23, 1986, the FDLE *1358 office received a telephone call from Hodges’ sister in Orlando, who reported that an unidentified person had called her to say that “Jackie was in bad shape.” During the next week, Hodges missed several days of work due to reported illness and personal problems, requested but was denied 25 days of annual leave, and exhibited behavior which her supervisors considered to be atypical of her past behavior, including failing to notify her employer that she would be absent and failing to report for an assigned surveillance task.
On April 29, Hodges was advised by telephone that her April 28 and April 29 absences would be considered unexcused, and that after three days she would be deemed to have abandoned her position. When Hodges refused to report to the office, Mr. Pinede (who was filling in at the time for supervisor Solowsky) and Mr. Cooper (a special agent supervisor) were sent to Hodges’ home to determine whether she was okay and why she would not come to work. Hodges refused to speak with Pi-nede and Cooper, and was again contacted by telephone and directed to appear at the office the following morning. When Hodges arrived on April 30, Cooper informed her that she was being directed to participate in FDLE’s employee assistance program, and that an appointment with a psychiatrist (Dr. Fitzhugh) had been scheduled for her on May 1. She was also advised that she was being placed on administrative leave. Miami Bureau Chief Bolanos and Deputy Director of Division of Criminal Investigations Fenwick determined later that day that Hodges should also be given a complete physical exam, including a body fluid analysis to test for the presence of drugs and alcohol. Cooper spoke with the Urgent Medical Care Facility that day, to arrange for a physical exam including testing for drugs and alcohol, which was not a normal part of the physical exams conducted at the facility. When Hodges arrived at the office on the afternoon of May 1,1986 to pick up her belongings, she was given a memorandum ordering her to submit “immediately” to a complete physical, including body fluid analysis, at Urgent Medical Care. The memo did not state a reason for the exam, but cited Rule 22A-8.12 (currently 22A-8.012), Florida Administrative Code. Hodges reported to Urgent Medical Care for a physical exam, but refused to give blood or urine samples or to complete the medical history form.
On May 6, 1986, Hodges received a second written order to submit to a physical exam including body fluid analysis, stating that the purpose of the exam was to evaluate her fitness for duty. Appellee again submitted to a limited exam (including a chest x-ray and EKG), but on the advice of counsel refused to submit to a blood, urine, breast, or gynocological exam). The examining doctor (Dr. McCarthy) determined that her physical condition was normal as far as the exam could tell.
On July 7,1986, Dr. Fitzhugh stated that Hodges was physically unable to perform her duties with FDLE. As a result, she was placed on twenty days compulsory disability leave, pursuant to Rule 22A-8.012, and was advised that two more appointments had been scheduled for her: (1) an appointment with Dr. Fitzhugh on July 14, and (2) another appointment at Urgent Medical Center for a physical exam including body fluid analysis on July 18.
On July 18, Hodges submitted to a physical exam by a Dr. Weber, but again, on advice of counsel, refused to participate in blood, urine, breast, gynocological, or rectal exams. Based on the examination performed, Dr. Weber found Hodges to be in good health, with no indications of diabetes, thyroid, or drug problems. Weber stated that more definite diagnosis could not be made without blood or urine tests, but concluded that she was capable of doing any kind of work within the limits of the exam given by him. He suspected that Hodges’ problems were emotional and stemmed from the situation with her supervisors. On July 25, 1986, FDLE received another report from Dr. Fitzhugh, indicating that based on his most recent evaluation of Hodges she was now able to deal *1359 with complex and stressful law enforcement situations.
On July 30, 1986, Hodges received FDLE’s notice of proposed dismissal, and on August 26, 1986, she received notice of final agency action of dismissal based on her inability to perform her duties as a special agent. Hodges filed a timely appeal, and on December 22, 1986 the PERC hearing officer issued a recommended order identifying the issue to be to what extent and under what circumstances an agency could invoke Rule 22A-8.12(2) to require an employee to submit to such intrusive procedures as urine and blood analysis, breast, gynocological, and rectal exams. Applying City of Palm Bay v. Bauman, 475 So.2d 1322 (Fla. 5th DCA 1985), the hearing officer concluded that FDLE had not had a reasonable suspicion which would justify the requested procedures and, on that basis, recommended reversal of Hodges’ termination with an award of back pay, costs, and attorneys fees.
After examining the exceptions filed by both parties, and hearing oral argument, the Commission issued a final order on March 23, 1987, adopting the Hearing Officer’s findings of fact as supported by CSE. However, since FDLE had expressly stated in its exceptions to the recommended order that Hodges was dismissed solely on the ground that she was unable to perform her assigned duties — and not on her failure to submit to body fluid analysis — the Commission concluded that it was unnecessary to determine whether FDLE could require an employee to submit to these tests under penalty of dismissal. Instead, the Commission framed the issue as whether Hodges’ dismissal for inability to perform her assigned duties was warranted under Rule 22A-8.12(2). Based on a finding that the evidence was insufficient to establish Hodges’ inability to perform her duties at the time of her dismissal, the Commission adopted the Hearing Officer’s recommendation that Hodges’ termination be reversed.
We find the final order issued by the Commission to be supported by competent substantial evidence. Rule 22A-8.012(2) provides, in pertinent part, as follows:
(a) An agency head who believes that an employee is unable to perform assigned duties due to illness or injury may require the employee to submit to a medical examination by a physician named and paid by the agency. If the medical examination confirms that the employee is unable to perform assigned duties, the agency head shall place the employee on compulsory disability leave.
(b) At the time the agency head determines that the employee is to be placed on compulsory disability leave, the employee shall be notified in writing of the duration of the mandatory leave period and the conditions under which the employee will be allowed to return to the position.
[[Image here]]
(d) If the employee is unable to return to work at the end of the mandatory leave period, based on a current medical certification, the agency head may:
[[Image here]]
4. Dismiss the employee for cause based on inability to perform assigned duties.
As outlined in the Commission’s order, the events during the week of April 23, 1986 initially gave FDLE reason to believe that Hodges was unable to perform her assigned duties “due to illness or injury.” Based on this belief, the agency correctly exercised its option to require Hodges to submit to a medical exam, pursuant to Rule 22A-8.012(2)(a). Since a portion of the medical exam (Dr. Fitzhugh’s report of July 7, 1986) confirmed that Hodges was unable to perform her assigned duties, FDLE correctly placed her on compulsory disability leave and notified her of the duration of the leave and the conditions under which she would be allowed to return to work. At the end of the compulsory leave period, both Dr. Fitzhugh and Dr. Weber stated that she was able to return to work.
*1360 We therefore agree with the Commission’s conclusion that according to (2)(d), FDLE had no grounds to dismiss Hodges at that time.
As a second ground, appellant argues that the Commission erred in failing to specifically determine whether FDLE had the authority to require body fluid analysis pursuant to Rule 22A-8.12(2)(a). We disagree. FDLE specifically stated in its exceptions to the recommended order that its termination of Hodges was not based on her refusal to submit to the analysis, but on its determination that she was unable to perform her assigned duties. Based on the position taken by FDLE, both in the exceptions and throughout this case, we find that such a determination was not warranted under the facts of this case.
Accordingly, the final order of the Public Employees Relations Commission is hereby AFFIRMED.
ZEHMER, J., concurs.
THOMPSON, J., concurs with result only.