537 So.2d 162 (1989)
Christine M. FOWLER, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION and Volusia County Sheriff's Department, Appellees.
No. 88-924.
District Court of Appeal of Florida, Fifth District.
January 12, 1989.
Frederick C. Morello, of Smalbein, Johnson, Rosier, Bussey, Rooney & Ebbets, P.A., Daytona Beach, for appellant.
Daniel D. Eckert, Asst. County Atty., Deland, for appellee Volusia County Sheriff's Dept.
Geri Atkinson-Hazelton, Gen. Counsel, Tallahassee, for appellee Unemployment Appeals Com'n.
SHARP, Chief Judge.
Fowler appeals from an order of the Unemployment Appeals Commission which reversed the appeals referee's award of unemployment compensation. The issue is whether or not Fowler's refusal to submit to a urinalysis ordered by her employer, the Volusia County Sheriff's Department, which resulted in her discharge, constitutes "misconduct" as defined by section 443.036(24), Florida Statutes (1985).[1] If such refusal is sufficiently egregious, Fowler is not entitled to receive unemployment compensation. We affirm.
The facts in this case are not in dispute. Fowler worked in the Sheriff's Department as a dispatcher for approximately nine months. At that time, the Department was initiating a required urinalysis test for all new employees. However, it did not have a policy of random testing as a condition of continued employment; nor did it have a policy requiring employees who were under reasonable suspicion of drug use, to submit to a test. It did have a policy forbidding off-duty drug use by its employees; and it had a general requirement that all employees obey lawful orders as required or directed by their superiors.
On August 28, 1987, two of Fowler's supervisors filed a memorandum with the Department, which noted adverse changes in her appearance, attitude and job performance, and which expressed the view that these changes could be symptomatic of drug abuse. The memo concluded:
It is both L Curry and this writers opinion that some form of substance abuse may also be occurring based on the above actions (symptoms). This area is to be watched carefully during the next few weeks by this writer.
On September 9, 1987, the Department received an affidavit from a person who was involved in a disturbance at Fowler's apartment, which she shared with a boyfriend named Robert. The affiant said that *163 he had observed Fowler and others "snorting lines of cocaine" in the apartment. The memo and the affidavit prompted an investigation of Fowler by Sergeant Bosco of the Internal Affairs Division of the Sheriff's Department.
After consulting with Sergeant Bosco, the Sheriff wrote Fowler a letter, which was hand-delivered September 11, 1987. It ordered Fowler to submit to a urinalysis test at the Health Department. The Sheriff stated that he had reasonable suspicion that Fowler had used, or was presently using, an illegal substance. She was immediately suspended was ordered to accompany Sergeant Bosco to be tested, or face the possibility of being discharged.
Fowler refused to be tested. She took the letter to an attorney to find out what her legal rights were. On September 17, 1987, the Sheriff sent Fowler a proposed termination letter. He invited Fowler to furnish him with a written rebuttal of why she should not be discharged, within three days. She did not respond. On September 22, 1987, Fowler was discharged.
The appeals referee based his decision on the fact that the Sheriff's Department had no policy in place which made submission to a urinalysis test on demand a condition of continued employment. It was not a condition upon which Fowler accepted employment. He concluded that since it was never a part of her "hiring agreement," her refusal to be tested did not constitute "misconduct."
"Misconduct" is defined for purposes of disallowing unemployment compensation as including "[c]onduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee ..." See section 443.036(24)(a). We have held in various other factual contexts that the disobedience on the part of the employee must be willful and deliberate, or extremely wanton to preclude the award of unemployment compensation.[2] Here there is no dispute but that Fowler disobeyed the Sheriff's order to be tested, and that she was forewarned that her failure to comply might result in discharge.
Fowler relies upon Vaughn v. Florida Unemployment Appeals Commission, 482 So.2d 593 (Fla. 4th DCA 1986), which concerned an employer's requirement that a store manager take a polygraph test when the store inventory turned up short in various categories. The employee had previously submitted to polygraph tests, but refused to do so on this occasion. The employer had no policy that submission to such tests was a condition of continued employment. The employee was fired for refusing the test, and thereafter sought unemployment compensation. The Fourth District Court of Appeal affirmed the award on these facts. See also, Swope v. Florida Industrial Commission Unemployment Compensation Board of Review, 159 So.2d 653 (Fla. 3rd DCA 1963) (store employees discharged for failure to take polygraph tests were entitled to unemployment compensation benefits). However, Vaughn and Swope are distinguishable from the instant case because in those cases the employers did not have a "reasonable suspicion" that the employee had violated a key duty or obligation of employment. Rather, both cases were fishing expeditions based on inventory shortages.
In City of Palm Bay v. Bauman, 475 So.2d 1322 (Fla. 5th DCA 1985), we upheld as valid a city policy for police and firefighter employees that such employees could be required to submit to a urinalysis test to show drug use at set times such as hiring, annual exams, and others. We also held that the policy could require an employee to submit to such a test, if the employer or supervisor had a "reasonable suspicion" that an employee was using drugs on or off the job. We stressed the importance of having a competent drug-free cadre of fire fighters and policemen; and noted that the effect of illegal substances *164 may last hours or days following their use or abuse.
The essential holding in City of Palm Bay was not the existence of a preset policy before the employer can comb his work force for substance abusers. For random testing of public employees at nonscheduled times, we said there had to be a "reasonable suspicion" the employee was using illegal drugs. In this case, the Sheriff and Sergeant Bosco concluded there were sufficient grounds to think Fowler was taking illegal drugs. Fowler does not dispute this; nor did the appeals referee question the Sheriff's claim of reasonable suspicion.
Consistent with our holding in City of Palm Bay, the Sheriff could legally require Fowler to submit to a urinalysis test, whether such request was ad hoc or en masse by use of a promulgated policy. The existence vel non of a policy requiring an employee to submit to a urinalysis when the employer has a reasonable suspicion of drug use by the employee is not essential. Reasonable suspicion is all that is required. Failure to submit to a test, after being warned that failure to do so may result in dismissal, constitutes a deliberate disregard of the employer's interests, particularly where the employee is engaged in the kind of work for which full mental and physical competence is essential, not only for the employer's and employee's welfare, but for the safety and welfare of the general public.
AFFIRMED.
DAUKSCH and DANIEL, JJ., concur.
NOTES
[1] The legislature renumbered subsection (24) as subsection (25), effective after the date Fowler was discharged.
[2] See Lewis v. Unemployment Appeals Commission, 498 So.2d 608 (Fla. 5th DCA 1986); Williams v. Unemployment Appeals Commission, 484 So.2d 89 (Fla. 5th DCA 1986); Erber v. Federal Express Corp., 409 So.2d 522 (Fla. 5th DCA 1982).