The Honorable Guy L. Carlton Collier County Tax Collector
QUESTION:
Is the Collier County Tax Collector authorized to implement a policy of random drug testing for his or her employees in order to protect the governmental financial interest of the office?
SUMMARY:
The Collier County Tax Collector is not authorized by either Florida statute or case law to implement a random drug testing policy for his or her employees in the absence of a reasonable suspicion that an employee is using illegal drugs.
During the 1990 legislative session, a drug-free workplace program was established. Pursuant to s. 440.101, F.S. (1990 Supp.), it was the intent of the Legislature in establishing this program:
[T]o promote drug-free workplaces in order that employers in the state be afforded the opportunity to maximize their levels of productivity, enhance their competitive positions in the marketplace, and reach their desired levels of success without experiencing the costs, delays, and tragedies associated with work-related accidents resulting from drug abuse by employees.
An "[e]mployer" for purposes of the act is defined as "a person or entity that employs a person and that is covered by the workers' Compensation Law."[1] As a local governmental entity, the county may provide workers' compensation pursuant to Ch. 440, F.S., either individually or by entering into an interlocal agreement for this purpose.[2] Thus, a county may adopt the drug-free workplace program as contained in Ch. 440, F.S. (1990 Supp.).
If an employer determines that he or she will institute this drug-free workplace program, certain notice must be given to employees[3] and job applicants.[4] This notice must include a general statement of the employer's policy on employee drug use which must identify: 1) the types of testing to which an employee or job applicant may be required to submit, including reasonable suspicion or other basis; 2) the actions the employer may take against an employee or job applicant on the basis of a positive confirmed drug test result.[5] If an employer does not have a drug testing program in place prior to adopting the drug-free workplace program, at least 60 days must elapse between a general one-time notice to all employees that a drug testing program is being implemented and the beginning of actual drug testing. If an employer has a drug testing program in place prior to implementing the drug-free workplace program, 60 days notice is not required.[6]
The statute identifies four types of drug testing which may qualify the employer for reduced rates for workers' compensation insurance when a drug-free workplace plan is implemented. Pursuant to s. 440.102(4), F.S. (1990 Supp.), an employer is required to utilize one of these types of drug tests in order to qualify for such discounts:
(a) Job applicant testing. — An employer must require job applicants to submit to a drug test and may use a refusal to submit to a drug test or a positive confirmed drug test as a basis for refusal to hire the job applicant. (b) Reasonable suspicion. — An employer must require an employee to submit to reasonable suspicion drug testing. (c) Routine fitness for duty. — An employer must require an employee to submit to a drug test if the test is conducted as part of a routinely scheduled employee fitness-for-duty medical examination that is part of the employer's established policy or that is scheduled routinely for all members of an employment classification or group. (d) Follow-up testing. — If the employee in the course of employment enters an employee assistance program for drug-related problems, or an alcohol and drug rehabilitation program, the employer must require the employee to submit to a drug test as a followup to such program, and on a quarterly, semiannual, or annual basis for up to 2 years thereafter.
No provision is made in the drug-free workplace program for random testing of employees by an employer.
The program established by Ch. 440, F.S., is not the exclusive statutory drug testing program. A parallel program for state government is established by s. 112.0455, F.S. (1990 Supp.),[7] and authorizes the same types of testing described above.[8]
As is the case with the Ch. 440 F.S., program, the state government drug-free workplace program does not authorize random drug testing. Thus, random drug testing is not authorized by the drug-free workplace programs provided for by statute.
In City of Palm Bay v. Bauman,[9] a 1985 appellate court case, the court considered a city's authority to require all police officers and fire fighters employed by the city to submit to a urinalysis test to show drug use. While the court recognized and agreed with the city that these city employees must expect to meet some required minimum standards of physical condition in order to be hired and retained, the court required that the city must utilize a "reasonable suspicion standard" as the basis for subjecting these officers to drug testing.
Pointing out that "reasonable suspicion is also referred to as founded suspicion," the court in City of Palm Bay described the "reasonable suspicion standard" as
something less than probable cause, but something more than a mere suspicion. It is a reasonable suspicion that requires further investigation. . . . It is a suspicion which has some factual foundation in the surrounding circumstances observed by the officer, when those situations are interpreted in light of the officer's knowledge.[10]
The court determined that the city could adopt a policy prohibiting police officers and fire fighters from using controlled substances at any time while they were so employed whether such use was on or off the job. Such a far reaching policy was justified by the potential danger to both the officers and to the general public from such officers if they were impaired by drug use. In addition, the court pointed out that "police officers who are sworn to enforce the laws lose credibility and public confidence if they violate the very laws they are sworn to enforce."[11] However, the court upheld an injunction against the city prohibiting it from subjecting these officers to random drug testing in the absence of reasonable suspicion.
Subsequently, the court readdressed its holding in the City ofPalm Bay case in Fowler v. Unemployment Appeals Commission.[12]
The issue in Fowler, was whether or not Fowler's refusal to submit to a urinalysis test, ordered by her employer, the Volusia County Sheriff's Department, constituted "misconduct." If the refusal was sufficiently egregious, Fowler was not entitled to receive unemployment compensation. Ms. Fowler was employed as a dispatcher in the sheriff's department.
An appeals referee had awarded the unemployment compensation to Ms. Fowler based on the fact that the sheriff's department had no policy in place making submission to a urinalysis test on demand a condition of continued employment. Nor was such testing a condition upon which Fowler accepted employment. However, the court determined that the holding in City of Palm Bay did not require an employer to have a preset policy before implementing drug testing; rather "[f]or random testing of public employees at nonscheduled times, we said there had to be a `reasonable suspicion' the employee was using illegal drugs."[13]
The court stated that:
Consistent with our holing in City of Palm Bay, the Sheriff could legally require Fowler to submit to a urinalysis test, whether such request was ad hoc, or en masse by use of a promulgated policy. The existence vel non of a policy requiring an employee to submit to a urinalysis when the employer has a reasonable suspicion of drug use by the employee is not essential. Reasonable suspicion is all that is required. Failure to submit to a test, after being warned that failure to do so may result in dismissal, constitutes a deliberate disregard of the employer's interests, particularly where the employee is engaged in the kind of work for which full mental and physical competence is essential, not only for the employer's and employee's welfare, but for the safety and welfare of the general public.[14]
Thus, Florida courts have determined that random drug testing is not permissible, in the absence of a reasonable suspicion that the employee is using illegal drugs. However, an employer, such as the Collier County Tax Collector may implement a policy of drug testing which follows the general pattern set forth in theFowler case, supra, or may implement the statutory drug-free workplace program.
[1] Section 440.102(1)(h), F.S. (1990 Supp.).
[2] See, s. 440.02(14), F.S. (1990 Supp.), which defines "[e]mployer,' for purposes of the Workers' Compensation Law, to include "the state and all political subdivisions thereof . . ."; and s. 440.575, F.S. (1990 Supp.), authorizing local government pools for workers' compensation.
[3] An "[e]mployee" is defined by s. 440.102(1)(g), F.S. (1990 Supp.), as "any person who has applied for a position with an employer and has been offered employment conditioned upon successfully passing a drug test."
[4] The text for footnote 4 is missing.
[5] Section 440.102(3)(a)1. and 2., F.S. (1990 Supp.).
[6] Section 440.102(3)(1), F.S. (1990 Supp.).
[7] Section 112.0455, F.S. (1990 Supp.), is designated the "Drug Free Workplace Act[,]" see, s. 112.0455(1), F.S. (1990 Supp.), and applies to "any agency within state government[,]"see, s. 112.0455(5)(h), F.S. (1990 Supp.).
[8] See, s. 112.0455(7), F.S. (1990 Supp.).
[9] 475 So.2d 1322 (5 D.C.A. Fla. 1985).
[10] The court was quoting from State v. Hunt,391 So.2d 760 (5 D.C.A. Fla., 1980).
[11] Supra, footnote 9 at 1326.
[12] 537 So.2d 162 (5 D.C.A. Fla., 1989), reviewdenied, 545 So.2d 1367 (Fla. 1989).
[13] Id., at 164.
[14] Id.