Mr. Paul Valenti, Attorney Central County Water Control District HC61, Box 155 Clewiston, Florida 33440
Dear Mr. Valenti:
On behalf of the Board of Supervisors of the Central County Water Control District, you ask substantially the following question:
Are the provisions of section 112.0455, Florida Statutes, applicable to the Central County Water Control District, created pursuant to Chapter 298, Florida Statutes?
In sum:
While the provisions of section 112.0455, Florida Statutes, are applicable to state agencies and, thus, are inapplicable to the water control district, the provisions of sections440.101-440.102, Florida Statutes, may be utilized by the water control district to establish a drug-free workplace.
Section 112.0455, Florida Statutes, entitled the "Drug-Free Workplace Act,"[1] seeks to promote the goal of a drug-free workplace within government through fair and reasonable drug-testing methods.[2] Employers seeking to institute a drug-free workplace program must provide notice to their employees.[3] The act authorizes an employer to conduct four types of drug testing: job applicant testing, reasonable suspicion testing, routine fitness for duty testing, and followup testing.[4]
The term "(e)mployer" for purposes of section 112.0455, Florida Statutes, is defined as "any agency within state government that employs individuals for salary, wages, or other remuneration."[5]
Thus, the provisions of section 112.0455, Florida Statutes, are applicable to state agencies. A special district, created by the Legislature to provide specific services within a limited area or for a special purpose, is not generally considered to be a state agency unless legislatively designated as such.[6]
For example in Attorney General Opinion 90-66, this office concluded that water management districts, created pursuant to Chapter 373, Florida Statutes, were not state agencies within the purview of section 253.025(8)(e), Florida Statutes. This conclusion was based on earlier opinions recognizing the distinctions between a state office or agency and a district. In Attorney General Opinion 84-21, this office recognized that state offices or agencies are component parts of the state whose jurisdiction extends to every part of the state while districts are defined portions or subdivisions of the state for special and limited governmental purposes. Unless legislatively declared to be or designated as an agency of the state or county, a district is not an agency of the state or county government.[7]
While the water control district would not appear to be a state agency for purposes of section 112.0455, Florida Statutes, the program established by section 112.0455 is not the exclusive statutory drug testing program. A program established by Chapter 440, Florida Statutes, authorizes the same types of testing as the workers' compensation program described above.
Pursuant to section s. 440.101, Florida Statutes, it was the intent of the Legislature in establishing this program
"to promote drug-free workplaces in order that employers in the state be afforded the opportunity to maximize their levels of productivity, enhance their competitive positions in the marketplace, and reach their desired levels of success without experiencing the costs, delays, and tragedies associated with work-related accidents resulting from drug abuse by employees."[8]
An "(e)mployer" for purposes of the act is defined as "a person or entity that employs a person and that is covered by the Workers' Compensation Law."[9] As a local governmental entity, the district may provide workers' compensation pursuant to Chapter 440, Florida Statutes, either individually or by entering into an interlocal agreement for this purpose.[10] Thus, the district may adopt the drug-free workplace program as contained in Chapter 440, Florida Statutes.
If the district determines that it will institute this drugfree workplace program, certain notice must be given to employees and job applicants.[11] This notice must include a general statement of the employer's policy on employee drug use, which must identify: 1) the types of drug testing to which an employee or job applicant may be required to submit; and 2) the actions the employer may take against an employee or job applicant on the basis of a positive drug test result.[12]
If an employer does not have a drug testing program in place prior to adopting the drug-free workplace program, at least 60 days must elapse between a general one-time notice to all employees that a drug testing program is being implemented and the beginning of actual drug testing. Section 440.102(4), Florida Statutes, identifies four types of drug testing that may qualify the employer for reduced rates for workers' compensation insurance when a drug-free workplace plan is implemented. An employer is required to utilize one of these types of drug tests in order to qualify for such discounts:
"1. Job applicant drug testing. — An employer must require job applicants to submit to a drug test and may use a refusal to submit to a drug test or a positive confirmed drug test as a basis for refusing to hire a job applicant.
2. Reasonable-suspicion drug testing. — An employer must require an employee to submit to reasonable-suspicion drug testing.
3. Routine fitness for duty testing. — An employer must require an employee to submit to a drug test if the test is conducted as part of a routinely scheduled employee fitness-for-duty medical examination that is part of the employer's established policy or that is scheduled routinely for all members of an employment classification or group.
4. Followup drug testing. — If the employee in the course of employment enters an employee assistance program for drug-related problems, or a drug rehabilitation program, the employer must require the employee to submit to a drug test as a followup to such program, unless the employee voluntarily entered the program. In those cases, the employer has the option to not require followup testing. If followup testing is required, it must be conducted at least once a year for a 2-year period after completion of the program. Advance notice of a followup testing date must not be given to the employee to be tested."[13]
While section 440.102(4)(c), Florida Statutes, provides that the subsection does not preclude a private employer from conducting random testing, or any other lawful testing, of employees for drugs, no similar provision is provided for public agencies.[14]
Thus, this office stated in Attorney General Opinion 91-98, that the county tax collector, although authorized under Chapter 440, Florida Statutes, to adopt a drug testing program for his employees, was not authorized to implement a random drug testing policy.[15]
Accordingly, I am of the opinion that while the provisions of section 112.0455, Florida Statutes, are applicable to state agencies and thus are inapplicable to the water control district, the provisions of sections 440.101-440.102, Florida Statutes, may be utilized by the water control district to establish a drug-free workplace.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Section 112.0455(1), Fla. Stat. (1995).
[2] Section 112.0455(2), Fla. Stat. (1995).
[3] See, s. 112.0455(6), Fla. Stat. (1995).
[4] Section 112.0455(7), Fla. Stat. (1995).
[5] See, s. 112.0455(5)(h), Fla. Stat. (1995).
[6] See generally, Forbes Pioneer Boat Line v. Board ofCommissioners, 82 So. 346 (Fla. 1919); Town of Palm Beach v. Cityof West Palm Beach, 55 So.2d 566 (Fla. 1951) (holding that officers of a special district are neither state nor county officers). Cf., State v. Burns, 21 So. 290 (Fla. 1896); Jackson v. State, 71 So. 332 (Fla. 1916) (state officer is one who exercises the sovereign powers of the state and whose powers and duties are coextensive with the state's boundaries); In Re Advisory Opinionto Governor, 1 So.2d 636 (Fla. 1941).
[7] See generally, s. 189.403(1), Fla. Stat., defining "Special district" to mean "a local unit of special purpose, as opposed to general-purpose, government within a limited boundary, created by general law, special act, local ordinance, or by rule of the Governor and Cabinet. . . ."
[8] Section 440.101(1), Fla. Stat.
[9] Section 440.102(1)(h), Fla. Stat.
[10] See, s. 440.02(14), Fla. Stat., which defines "(e)mployer," for purposes of the Workers' Compensation Law, to include "the state and all political subdivisions thereof, . . ." and s.624.4622, Fla. Stat., authorizing local government pools for workers' compensation. And see, s. 1.01(8), Fla. Stat., stating that in construing the Florida Statutes, where the context will permit, the term "political subdivision" includes "districts in this state."
[11] See, s. 440.102(1)(f), Fla. Stat., defining "(e)mployee" as "any person who works for salary, wages, or other remuneration for an employer"; and s. 440.102(1)(j), Fla. Stat., defining a "(j)ob applicant" as "a person who has applied for a position with an employer and has been offered employment conditioned upon successfully passing a drug test[.]"
[12] Section 440.102(3)(a)1. and 2., Fla. Stat.
[13] Compare, the definitions of the types of testing authorized in s. 112.0455(7), Fla. Stat.
[14] Compare, s. 944.474(2), Fla. Stat. (1996 Supp.), authorizing the Department of Corrections to develop a program for the random drug testing of all employees without the necessity of reasonable suspicion of illegal drug use.
[15] And see, City of Palm Bay v. Bauman, 475 So.2d 1322 (Fla. 5th DCA 1985); and Fowler v. Unemployment Appeals Commission,537 So.2d 162 (Fla. 5th DCA 1989), review denied, 545 So.2d 1367
(Fla. 1989).