571 So.2d 1309 (1989)
CITY of MIAMI, Florida, Appellant,
v.
F.O.P., MIAMI LODGE 20, and Florida Public Employees Relations Commission, Appellees.
No. 85-2863.
District Court of Appeal of Florida, Third District.
January 31, 1989.
On Rehearing April 17, 1990.
On Motion to Certify Question January 22, 1991.
*1310 Morgan, Lewis & Bockius and Peter J. Hurtgen and Claudia B. Dubocq, Craig J. Freger, Miami, for appellant.
Klausner & Cohen, Miami, and Robert Klausner, Hollywood, for appellee F.O.P. [Fraternal Order of Police], Miami Lodge 20.
*1311 H. Lee Cohee, II, Tallahassee, for appellee Florida Public Employees Relations Com'n.
James R. Wolf, Tallahassee, for Florida League of Cities, Inc., as amicus curiae.
Thomas D. Guilfoyle and George Aylesworth, Miami, for Florida Sheriff's Ass'n, Florida Police Chief's Ass'n, Dade County Ass'n of Chiefs of Police, Florida Ass'n of Police Attorneys, as amici curiae.
Terence G. Connor, Miami, for Florida Public Employer Labor Relations Ass'n, as amicus curiae.
Before HUBBART, BASKIN and DANIEL S. PEARSON, JJ.
On Rehearing En Banc April 17, 1990.
DANIEL S. PEARSON, Judge.

Prologue
We begin with a warning that although the words "drug testing" appear throughout this opinion, the reader who wishes to explore such issues as whether any constitutional right of police officers is infringed by compulsory drug testing,[1] or whether drug testing of police officers is advisable,[2] should look elsewhere. Here, "[t]he determinative factors are not whether drugs are dangerous, or whether drug testing is intrusive... ." International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers v. Southwest Airlines Co., 842 F.2d 794, 799, rehearing en banc granted, 853 F.2d 283 (5th Cir.1988). Instead, this case, unlike its more exotic relatives living under the same key number, involves the quite ordinary issue of whether compulsory drug testing of police officers employed by a city is a subject of mandatory collective bargaining between the city and the union which represents the officers.

I.
One day in June 1985, two incidents involving Miami police officers were reported to the Miami Police Department. One report was from a person who stated that he had just seen a Miami police officer using cocaine in the restroom of a Miami restaurant. The second report was that a police officer had been seen purchasing marijuana while another officer waited in the car. The police department ordered the three officers to submit to urinalysis tests for the presence of drugs. The alleged cocaine user refused and was relieved of duty; the other officers submitted to the tests under protest and retain their jobs pending the outcome of this case and the ultimate disclosure of the results of the tests.[3]
A short time later, the Fraternal Order of Police, Miami Lodge 20 [FOP], the union representing the officers, filed unfair labor practice charges against the City of Miami. FOP sought injunctive relief, claiming, inter alia, that the City had failed to bargain and had interfered with the employees' rights. Although the hearing officer of the Public Employees Relations Commission [hereafter, PERC or the Commission] concluded that compulsory drug testing as a condition of the officers' continued employment was a subject of mandatory collective bargaining under Chapter 447, Florida Statutes (1983), he determined that the City had not committed an unfair labor practice *1312 because FOP had waived its right to bargain about drug testing when it agreed that the City would have the right to "examine" police officers and to "establish, implement and maintain an effective internal security program."
The City and FOP both appealed to the Commission. The Commission concluded that drug testing was a subject of mandatory collective bargaining, but, contrary to the hearing officer, found that FOP had not clearly and unmistakably waived its right to bargain about drug testing. Finding that the City had committed the unfair labor practices proscribed by Section 447.501(1)(a) and (c), Florida Statutes (1983),[4] the Commission ordered, inter alia, that the City "cease and desist from ... [u]nilaterally requiring its law enforcement employees represented by the FOP to submit to chemical testing (urinalysis) to detect the presence of controlled substances as a condition of continued employment ..." and that the City reinstate the three officers to the status they enjoyed prior to the events of June 1985. The City appeals, and we affirm.

II.
Section 447.309(1), Florida Statutes (1983), requires that the certified employee organization and the public employer "bargain collectively in the determination of the wages, hours, and terms and conditions of employment of the public employees within the bargaining unit." FOP contends, and we agree, that the statute is to be interpreted as requiring a relatively broad scope of negotiations to balance the absence of the right to strike by public employees. Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 425 So.2d 133 (Fla. 1st DCA 1983), affirmed in part, reversed in part on other grounds, 475 So.2d 1221 (Fla. 1985).
The reason for requiring this broad scope of negotiations is:
"Because there is no statutory procedure afforded the public employee to bring pressure upon an employer to make concessions in collective bargaining, either through a strike or binding arbitration, PERC has been provided broad authority under Section 447.503, as a means of allaying a significant imbalance of bargaining power in favor of the employer." 425 So.2d at 140.
See also School Board v. Palowitch, 367 So.2d 730, 731 (Fla. 4th DCA 1979); School Board v. Public Employees Relations Commission, 350 So.2d 819, 821 (Fla. 1st DCA 1977).[5] The requirement obviously extends to the "terms and conditions of employment," a phrase not otherwise defined in Chapter 447.
The question now becomes whether a certain subject  here, compulsory drug testing as a condition of employment  is "important enough to be considered a `term and condition of employment.'" City of Orlando v. Florida Public Employees Relations Commission, 435 So.2d 275, 278 (Fla. 5th DCA 1983). While no precise test exists for determining whether a certain term and condition of employment must be the subject of collective bargaining, it seems clear enough that a public employer must bargain over a change in rules "affecting, or impacting upon, employment or a condition of employment." Board of County Commissioners v. Central Florida Professional Fire Fighters Association, 467 So.2d 1023, 1026 (Fla. 5th DCA *1313 1985). See also City of New Port Richey v. Hillsborough County Police Benevolent Association, Inc., 505 So.2d 1096, 1097 (Fla. 2d DCA) (employer must bargain over wages, hours, and terms and conditions of employment, and over other issues that have an impact on them), review denied, 518 So.2d 1275 (Fla. 1987). It is likewise said that a public employer must bargain over an issue which "settle[s] an aspect of the relationship between the employer and employees." City of Orlando v. Florida Public Employees Relations Commission, 435 So.2d at 278-79 (quoting Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971)). Perhaps more obviously, "[d]emotion and discharge, including the definition of `cause' for discharge, are mandatory subjects of bargaining concerning which the parties are obligated to negotiate in good faith... ." Orange County Police Benevolent Association v. City of Casselberry, 457 So.2d 1125, 1128 (Fla. 1st DCA 1984), affirmed in part, reversed in part on other grounds, 482 So.2d 336 (Fla. 1986). See also Public Employees Relations Commission v. District School Board, 374 So.2d 1005, 1013 (Fla. 2d DCA 1979) ("It cannot be disputed that matters pertaining to the discharge of a teacher are terms and conditions of employment.").
Thus, there is little doubt that under these criteria, compulsory drug testing is a term and condition of employment which settles an aspect of and impacts upon the employment relationship and can lead to discipline and discharge and, therefore, is the subject of mandatory collective bargaining. Indeed, the National Labor Relations Board [NLRB] General Counsel has concluded that "obligatory tests, which may reasonably lead to discipline, including discharge, are plainly germane to the employees' working conditions and, therefore, are presumptively mandatory subjects of bargaining." Memorandum GC-87-5, [4 Labor Relations] Lab.L.Rep. (CCH) para. 9344, at 19,201 (Sept. 8, 1987).[6] Similarly, an NLRB administrative law judge, in ruling that compulsory drug testing is a term and condition of employment, found that drug testing is "germane" to the working environment. Star Tribune v. Newspaper Guild of the Twin Cities, Nos. 18-CA-9938 & 18-CA-10296, slip op. at 19 (NLRB, Nations, A.L.J., Nov. 3, 1988). Finally, in another case involving the drug testing of police officers, a state labor board ruled that compulsory urinalysis constitutes a subject of mandatory bargaining. City of New Haven v. New Haven Police Local 530, No. 2554-A (Conn.State Bd. of Lab. Rel. May 28, 1987). Accord City of Buffalo (Police Department), No. U-8922 (N.Y. PERC A.L.J. March 30, 1987).
We reject the City's contention that we must balance the importance of bargaining about a subject with the impact of such bargaining on the protection of the public. While the contention is certainly not meritless, see Local 346, International Brotherhood of Police Officers v. Labor Relations Commission, 391 Mass. 429, 462 N.E.2d 96 (1984); West Hartford Education v. DeCourcy, 162 Conn. 566, 295 A.2d 526 (1972), Florida courts have not utilized a balancing test to determine whether a matter must be submitted to collective bargaining.[7] Thus, in School Board v. Indian *1314 River County Education Association, 373 So.2d 412 (Fla. 4th DCA 1979), a teachers' union challenged the school board's unilateral alteration of the number of periods into which the school day is divided. The district court agreed with PERC's conclusion that the subject, though far from earth-shaking, had to be collectively bargained:
"To the uninitiated the change involved may seem de minimis and the entire controversy much ado about nothing, particularly since the new policy will result in 32 minutes of additional instruction time per week. However, the Commission made it clear in its order that `neither the qualitative difference between instruction and supervision nor the number of minutes per week that teachers are required to teach affects the Commission's decision in this case; consequently, no further discussion is warranted.' The point seems to be that Section 447.309(1), Florida Statutes (1977), requires the appellant to bargain in good faith with respect to any changes in `wages, hours, and terms and conditions of employment.' This change falls within the purview of that provision even though it may not be a change of great moment."

373 So.2d at 414 (emphasis added).
We also reject the City's contention that compulsory drug testing should be viewed as a fundamental decision concerning the direction of a private, for profit, business, and thus an "entrepreneurial concern" which does not have to be submitted to collective bargaining. See Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 425 So.2d at 137-38; Fibreboard Paper Products Co. v. NLRB, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). In our view, the "entrepreneurial concern" doctrine has no place in this case; while drug testing undoubtedly is important, see City of Palm Bay v. Bauman, 475 So.2d 1322 (Fla. 5th DCA 1985), it is not  as history surely tells us  fundamental to the functioning of the police force. Further, the NLRB General Counsel has declared that drug testing does not fall within the realm of managerial or entrepreneurial prerogatives. See Memorandum GC-87-5, [4 Labor Relations] Lab.L.Rep. (CCH) para. 9344, at 19,201.
Finally, we reject the City's argument that the conclusion that drug testing is a term and condition of employment violates the prerogatives granted to management by Section 447.209, Florida Statutes:
"It is the right of the public employer to determine unilaterally the purpose of each of its constituent agencies, set standards of services to be offered to the public, and exercise control and discretion over its organization and operations. It is also the right of the public employer to direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons."
We think the decision below, properly viewed, simply recognized that while the City has the right to regulate the police, the procedure used to regulate must be submitted to collective bargaining when the exercise of that right impacts on the lives of police officers. As the NLRB General Counsel stated, "a drug test is not simply a work rule  rather, it is a means of policing and enforcing compliance with a rule. There is a critical distinction between a rule against drug usage and the methodology *1315 used to determine whether the rule is being broken." Memorandum GC-87-5, [4 Labor Relations] Lab.L.Rep. (CCH) para. 9344, at 19,202.
The distinction between a managerial decision not falling within the ambit of "terms and conditions of employment" and the impact of those conditions on the employee's day-to-day life is made in Hillsborough Classroom Teachers Association v. School Board, 423 So.2d 969 (Fla. 1st DCA 1982). In that case, the court held that the setting of class size and staffing levels are policy decisions which are incorporated into the term "standards of service to be offered to the public," listed in Section 447.209 as items to be unilaterally set by the public employer, but the "impact of the implementation of such decisions on `wages, hours and terms and conditions of employment' when an appropriate showing of negotiable impact has been made" are subjects of mandatory bargaining. 423 So.2d at 970. See also Fire Fighters Union v. City of Vallejo, 12 Cal.3d 608, 116 Cal. Rptr. 507, 526 P.2d 971 (1974) (while layoff decisions are not generally bargainable, they are bargainable to the extent they affect remaining workers); Annot., Bargainable or Negotiable Issues in State Public Employment Labor Relations, 84 A.L.R.3d 242, 250 (1978) (courts have held that while many governmental rules and regulations are not "subjects of bargaining in themselves, [they] are bargainable or negotiable to the extent that they have an impact on the wages, hours, or conditions of employment of employees."). Cf. City of New Port Richey v. Hillsborough County Police Benevolent Association, Inc., 505 So.2d 1096 (Fla. 2d DCA) (no duty to bargain where employer changed employees' retirement plan, but change did not have any impact on benefits from or contributions to the plan), review denied, 518 So.2d 1275 (Fla. 1987).

III.
Mandatory collective bargaining of compulsory drug testing, as well as being required by Section 447.309, Florida Statutes, is also required by the right to work provision of the Florida Constitution. This provision  Article I, Section 6  states:
"Right to Work.  The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike."
(emphasis added).
Construing this provision, the supreme court has consistently held that "with the exception of the right to strike, public employees have the same rights of collective bargaining as are granted private employees by Section 6." Dade County Classroom Teachers' Association, Inc. v. Ryan, 225 So.2d 903, 905 (Fla. 1969); City of Tallahassee v. Public Employees Relations Commission, 410 So.2d 487 (Fla. 1981), affirming 393 So.2d 1147, 1150 (Fla. 1st DCA 1981) ("Since private employees have the right to collectively bargain as to retirement benefits, public employees also have that right... ."); Hillsborough County Governmental Employees Association, Inc. v. Hillsborough County Aviation Authority, 522 So.2d 358 (Fla. 1988). If, therefore, private employees have the right to collectively bargain about drug testing, public employees have that same right.
Federal agencies and courts interpreting the National Labor Relations Act have concluded that the subject of drug testing in private industry must be submitted to collective bargaining. While the National Labor Relations Board  like the Florida courts  has yet to address this issue, its General Counsel has ruled that drug testing of private employees is a subject of mandatory bargaining. Memorandum GC-87-5, [4 Labor Relations] Lab.L.Rep. (CCH) para. 9344 (Sept. 8, 1987). See Hebert, Private Sector Drug Testing: Employer Rights, Risks, and Responsibilities, 36 U.Kan.L.Rev. 850, 853 (1988) (suggesting that "it seems likely that the Board will adopt the position" of the General Counsel). See also Star Tribune v. Newspaper Guild of the Twin Cities, Nos. 18-CA-9938 *1316 & 18-CA-10296, slip op. at 17 (NLRB, Nations, A.L.J., Nov. 3, 1988) (ruling by administrative law judge that "drug and alcohol testing of current employees falls within the scope of the mandatory bargaining obligation."). Likewise, in cases decided under the Railway Labor Act (regulating labor relations in the railway and airline industries) courts have unanimously agreed that drug testing is a subject of mandatory bargaining.[8]Railway Labor Executives' Association v. Consolidated Rail Corp., 845 F.2d 1187 (3d Cir.), cert. granted, 488 U.S. 815, 109 S.Ct. 52, 102 L.Ed.2d 31 (1988); International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers v. Southwest Airlines Co., 842 F.2d 794, rehearing en banc granted, 853 F.2d 283 (5th Cir.1988); Brotherhood of Locomotive Engineers v. Burlington Northern Railroad Co., 838 F.2d 1087 (9th Cir.1988), petition for cert. filed, 57 U.S.L.W. 3017 (U.S. Apr. 1, 1988) (No. 87-1631); Railway Labor Executives Association v. Norfolk & Western Railway, 833 F.2d 700 (7th Cir.1988); Brotherhood of Maintenance of Way Employees v. Burlington Northern Railroad Co., 802 F.2d 1016 (8th Cir.1986); Railway Labor Executives' Association v. Port Authority Trans-Hudson Corp., 695 F. Supp. 124 (S.D.N.Y. 1988); Railway Labor Executives' Association v. National Railroad Passenger Corp., 691 F. Supp. 1516 (D.D.C. 1988).
Thus, because Article I, Section 6, of the Florida Constitution grants public employees the same bargaining rights as private employees, and because private employees have the right to bargain over compulsory tests for drugs, it follows that public employees in Florida have a constitutional right to bargain over drug testing.
The City contends, however, that the supreme court in United Teachers of Dade v. Dade County School Board, 500 So.2d 508 (Fla. 1986), narrowed this constitutional requirement of equal treatment of public and private employees:
"Our holding in Ryan that `public employees have the same rights of collective bargaining as are granted private employees,' 225 So.2d at 905, did not, however, mean that there are no differences between public and private employee bargaining. Indeed, we recognized as much in City of Tallahassee by stating that `[i]t would be impractical to require that collective bargaining procedures ... be identical in the public and the private sectors.' 410 So.2d at 491. Myriad distinctions, not just those of procedures, exist between public and private collective bargaining, and have been noted by the highest courts of several sister states."
Id. at 512.
See also Pinellas County Police Benevolent Association v. Hillsborough County Aviation Authority, 347 So.2d 801, 803 (Fla. 2d DCA 1977) ("A public employee's constitutional right to bargain collectively is not and cannot be coextensive with an employee's right to so bargain in the private sector. Certain limitations on the former's right are necessarily involved."). But, notwithstanding that there may be differences between public and private employee bargaining rights, the supreme court found that the employer in City of Tallahassee, 410 So.2d at 491, had "failed to demonstrate an interest justifying the abridgment" of bargaining rights. And finally, the supreme court recently stated that the right to collectively bargain is a fundamental right subject to abridgment only upon a showing of a compelling state interest. "This strict-scrutiny standard is one that is difficult to meet under any circumstance." Hillsborough County Governmental Employees Association v. Hillsborough County Aviation Authority, 522 So.2d 358, 362 (Fla. 1988).
Therefore, although it appears that Florida courts would allow constitutional collective bargaining rights to be abridged under certain circumstances, no case has found the special circumstances or compelling state interest which would justify abridging public employees' constitutional right *1317 to collective bargaining.[9] The case before us is hardly the one to break the ice. Here, as in Hillsborough County Governmental Employees Association, Inc. v. Hillsborough County Aviation Authority, 522 So.2d at 362, there is "some less intrusive means of accomplishing [the employer's goal] without impeding so dramatically on the right to bargain collectively." See also City of Tallahassee v. Public Employees Relations Commission, 410 So.2d at 491 ("[T]he state has failed to demonstrate an interest justifying the abridgment... ."). Collective bargaining is not such a formidable obstacle to the City's goal of a drug-free police force that the unilateral institution of compulsory drug testing should be permitted.

IV.
Our conclusion that compulsory drug testing is a subject for mandatory collective bargaining does not answer the question whether the City's failure to bargain on the subject is, ipso facto, an unfair labor practice under Section 447.501(1)(c), Florida Statutes. Compare City of New Port Richey v. Hillsborough County Police Benevolent Association, Inc., 505 So.2d 1096, 1097 (Fla. 2d DCA 1987) ("[A] public employer who unilaterally alters any of these mandatory subjects of collective bargaining commits an unfair labor practice.") and City of Orlando v. Florida Public Employees Relations Commission, 435 So.2d 275, 278 (Fla. 5th DCA 1983) ("[A] public employer is obligated to bargain collectively in the determination of the wages, hours, and terms and conditions of employment of the public employees within the bargaining unit and the failure to bargain on such mandatory items is an unfair labor practice.") with Public Employees Relations Commission v. District School Board, 374 So.2d 1005, 1012 (Fla. 2d DCA 1977) (expressing "no opinion" on the hearing officer's conclusion that breach of collective bargaining agreement is per se an unfair labor practice). But even assuming, arguendo, that not all breaches of collective bargaining agreements constitute unfair labor practices, this one certainly did. The record indicates that after the grievance was brought, the City would not agree to refrain from testing other employees. This drug testing by the City was a repudiation of past policy, impacting on the collective interests of the police, and constituted an unfair labor practice.

V.
Lastly, the City argues that even if FOP had the right to bargain over drug testing, the union waived that right. The City's claim of waiver is based on Article 4 of the collective bargaining agreement between the City and FOP, which provides that the City has "the right to operate and manage its affairs in all respects," and that these rights include the right "to establish, implement and maintain an effective internal security program" and the right to "suspend, demote, discharge, or take other disciplinary action against employees for proper cause." The City says (and, indeed, the hearing officer found) that "[b]y agreeing to this contractual provision, the FOP gave to the City the power the City would otherwise not have to unilaterally require its police officers who are the subject of an internal security investigation to submit to examination at any time during the term of the agreement."
But waiver of a bargaining right will be found only if the waiver is "clear and unmistakable." See Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 475 So.2d 1221, 1224 (Fla. 1985), affirming on this *1318 point 425 So.2d 133 (Fla. 1st DCA 1982). According to the NLRB General Counsel:
"A waiver by contract may be found where the language of the agreement is specific, and/or the history of prior contract negotiations suggests that the subject was discussed and `consciously yielded.' Waiver will not be inferred from the contract's silence on the subject, from a generally worded management prerogatives clause or from a `zipper' clause."
Memorandum GC-87-5, [4 Labor Relations] Lab.L.Rep. (CCH) para. 9344, at 19,203 (Sept. 8, 1987) (footnotes omitted).
The General Counsel noted, therefore, that "broad management rights clauses giving an employer the right ... to `make and apply rules and regulations for production, discipline, efficiency and safety' ... do not, standing alone, constitute a waiver of the union's right to bargain over drug testing." Id. See Star Tribune v. Newspaper Guild of the Twin Cities, Nos. 18-CA-9938 & 18-CA-10296, slip op. at 25 (NLRB, Nations, A.L.J., Nov. 3, 1988) (drug testing; "To find waiver, the Board has required that a matter be fully discussed and explored during negotiations and `consciously yielded' by the Union."). See also School Board v. Palowitch, 3 Fla.Publ.Empl.Rep. 280 (1977) (to find waiver where agreement does not directly speak of particular management right would encourage public employers to refrain from raising at the bargaining table subjects which it hopes to change), affirmed, 367 So.2d 730 (Fla. 4th DCA 1979).
There is nothing in the present agreement which specifically mentions drug testing, or can be fairly said to allude to it. The City's contractual right to maintain an "effective" internal security program does not include the right to require urinalysis. In this case, there was no evidence that the drug testing was even part of an internal security program; there were no department rules passed that might indicate that the drug testing requirement was part of a program; the drug tests were ordered not by Internal Security, but by the commander of the patrol section. Nor is the City's argument supported by the clause giving it the right to "suspend, demote, discharge, or take other disciplinary action against employees for proper cause." This generalized management rights clause is, in our view, analogous to a "zipper clause," the labor law equivalent of an integration clause. The Florida Supreme Court, in a case involving a claimed waiver of bargaining rights by public employees through a "zipper clause," said that such clauses "are generally interpreted only to maintain the status quo of a contract, and are not to be used to allow an employer to make unilateral changes in working conditions without bargaining." Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 475 So.2d at 1226. We agree with PERC "that neither a generalized management rights clause nor a `zipper clause' in a collective bargaining agreement grants an employer plenary authority to unilaterally alter any and all working conditions which are not explicitly delineated in the agreement." Hillsborough County Police Benevolent Association v. City of Tampa, 5 Fla.Pub.Empl. Rep. 1103 (1980) (quoted in Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 475 So.2d at 1226).

Epilogue
We have concluded, therefore, that the issue of compulsory drug testing of police officers was one which the City was required to collectively bargain with the officers' union. Having failed to do so, and having acted unilaterally when it required the officers to submit to testing, the City committed unfair labor practices.
Lest we be misunderstood, nothing we have said would prohibit the City from testing its police officers for drugs. It may do so, of course, if a drug testing program is made a part of a collective bargaining agreement.[10] Also, in the event *1319 of an impasse in bargaining, the City, acting in its legislative capacity, could unilaterally impose drug testing, if it deemed it to be in the public interest. See § 447.403(4)(d) & (e), Fla. Stat. As an NLRB administrative judge concluded recently:
"[A] determination that the components of the company's drug and alcohol testing policy are mandatory subjects of bargaining does not mean that Respondent, or any other employer, is barred from proposing and/or ultimately implementing such a policy... . Even the finding of a bargaining obligation does not prohibit the company from having a drug testing program, after agreement or impasse is reached."

Star Tribune v. Newspaper Guild of the Twin Cities, Nos. 18-CA-9938 & 18-CA-10296, slip op. at 23 (NLRB, Nations, A.L.J., Nov. 3, 1988).
Moreover, a public employer may argue the "exigent circumstances" exception to collective bargaining, well established in labor law, which permits employers, under certain circumstances, to engage in acts which are contrary to the collective bargaining agreement. As PERC has stated, the affirmative defense of exigent circumstances provides "relief to an employer who is forced by an emergency to quickly and immediately modify the wages, hours or terms and conditions of employment of its employees," Florida School for the Deaf and the Blind Teachers United v. Florida School for the Deaf and Blind, 11 Fla.Publ.Empl.Rep. para. 16080, at 263 (1985), affirmed, 483 So.2d 58 (Fla. 1st DCA 1986), and is an exception to the prohibition on employers unilaterally changing employees' wages, hours, or terms and conditions of employment. Id. at 267 n. 6. See also School Board v. Indian River County Education Association, 373 So.2d 412 (Fla. 4th DCA 1979). In the present case, the PERC hearing officer found that the City had not pleaded exigent circumstances, and the City, as it admits, decided not to argue it on appeal. Quite obviously, this court is in no position to decide the applicability of exigent circumstances in this case.
Finally, we should emphasize that the City was at all times free to bring disciplinary proceedings against the police officers based on such evidence, other than the compelled drug tests, that the City may have possessed to show that the officers were using illegal drugs.
In conclusion, although our decision is adverse to the City, it hardly leaves the City weaponless in its declared war on illegal drug use by its police officers.
AFFIRMED.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE, LEVY and GERSTEN, JJ.

*1320 ON REHEARING EN BANC
LEVY, Judge.

I.
This case was set for rehearing en banc to decide whether a city is required to enter into collective bargaining with the union which represents its police officers prior to engaging in compulsory drug testing of those officers.[1] We conclude that drug testing of police officers falls within the management prerogative of the City and, thus, is not a subject of mandatory collective bargaining.[2]
In June of 1985, two incidents involving Miami police officers were reported to the Miami Police Department. One report was from a person who stated that he had just seen a Miami police officer using cocaine in the restroom of a Miami restaurant. The second report was that a police officer had been seen purchasing marijuana while another officer waited in the police car. The police department ordered the three officers to submit to urinalysis tests for the presence of drugs. The alleged cocaine user refused and was relieved of duty based upon his failure to comply with the order.[3] The other two officers submitted to the tests under protest.[4]
A short time later, the Fraternal Order of Police, Miami Lodge 20 [FOP], the union representing the officers, filed unfair labor practice charges against the City of Miami. FOP sought injunctive relief, claiming, inter alia, that the City had failed to bargain and had interfered with the employees' rights. Although the hearing officer of the Public Employees Relations Commission [hereafter, PERC or the Commission] concluded that compulsory drug testing, as a condition of the officers' continued employment, was a subject of mandatory collective bargaining under Chapter 447, Florida Statutes (1983), he determined that the City had not committed an unfair labor practice because FOP had waived its right to bargain about drug testing when it agreed that the City would have the right to "examine" police officers and to "establish, implement and maintain an effective internal security program."
The City and FOP both appealed to the Commission. The Commission concluded that drug testing was a subject of mandatory collective bargaining, but, contrary to the hearing officer, found that FOP had not clearly and unmistakably waived its right to bargain about drug testing. Finding that the City had committed the unfair labor practices proscribed by *1321 Section 447.501(1)(a) and (c), Florida Statutes (1983),[5] the Commission ordered, inter alia, that the City "cease and desist from ... [u]nilaterally requiring its law enforcement employees represented by the FOP to submit to chemical testing (urinalysis) to detect the presence of controlled substances as a condition of continued employment ..." and that the City reinstate the three officers to the status they enjoyed prior to the events of June, 1985. We recognize that the Commission's interpretation of the statute and its decision to reinstate the officers is entitled to great weight by our courts. See Public Employees Relations Commission v. Dade County Police Benevolent Association, 467 So.2d 987 (Fla. 1985). However, in light of the compelling legal authority and policy reasons discussed throughout this opinion, we conclude the Commission's construction was clearly erroneous and not consistent with legislative intent. Accordingly, we reverse, finding that requiring police officers to submit to drug testing is not a mandatory subject of collective bargaining and, thus, the City has not engaged in unfair labor practices.[6],[7]

II.
Under Section 447.309, Florida Statutes (1983), if a subject involves the determination of "wages, hours, and terms and conditions of employment of the public employees," then it is considered a "mandatory" subject of bargaining over which the employer and the union must bargain in good faith to the point of impasse. If an impasse is reached, the employer is then allowed to act unilaterally pursuant to Section 447.403(4)(d) & (e), Florida Statutes (1983).[8] The employer is also allowed to act unilaterally if a subject does not fall with the statutory definition, or, in other words, is categorized as a "permissive" subject of bargaining.
While no Florida court has developed a precise test for ascertaining whether a particular subject should be considered a "mandatory" as opposed to a "permissive" subject of bargaining, it has been stated that a matter is to be mandatorily bargained if it "settle[s] an aspect of the relationship between the employer and employees." City of Orlando v. Florida Public Employees Relations Commission, 435 So.2d 275, 278-79 (Fla. 5th DCA) (quoting Allied Chemical & Alkali Workers v. *1322 Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971)), review denied, 443 So.2d 980 (Fla. 1983). Florida courts have also recognized that an issue is mandatory if it has a "material or significant impact upon wages, hours, or other conditions of employment" as opposed to being an issue which only "indirectly, incidentally, or remotely relate[s] to those subjects." City of Orlando, 435 So.2d at 279 (quoting Westinghouse Elec. Corp. v. NLRB, 387 F.2d 542 (4th Cir.1967)). See also City of New Port Richey v. Hillsborough County Police Benevolent Association, Inc., 505 So.2d 1096 (Fla. 2d DCA) (issue which has "an impact" upon terms and conditions of employment must be bargained), review denied, 518 So.2d 1275 (Fla. 1987); Board of County Commissioners v. Central Florida Professional Fire Fighters Association, Local 2057, 467 So.2d 1023 (Fla. 5th DCA 1985) (issue "affecting, or impacting upon, employment or a condition of employment" must be bargained). More specifically, Florida courts have held that matters pertaining to discharge and demotion concern mandatory subjects of bargaining over which the parties are obligated to negotiate in good faith. Orange County Police Benevolent Association v. City of Casselberry, 457 So.2d 1125 (Fla. 1st DCA 1984), affirmed in part, reversed in part on other grounds, 482 So.2d 336 (Fla. 1986); Public Employees Relations Commission v. District School Board, 374 So.2d 1005 (Fla. 2d DCA 1979), cert. denied, 383 So.2d 1193 (Fla. 1980).
However, as noted by the Fifth District in City of Orlando, 435 So.2d at 279 (quoting Westinghouse, 387 F.2d at 542), practically every managerial decision impacts in some way upon employees' conditions of employment and, thus, potentially all issues could be held to be mandatory subjects of bargaining. See also Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 223, 85 S.Ct. 398, 409, 13 L.Ed.2d 233, 245 (1964) (Stewart, J., concurring) ("Many decisions made by management affect the job security of employees."). Accordingly, courts as well as legislatures[9] have placed limits upon this seemingly all-encompassing category of mandatorily bargainable issues by recognizing the "managerial prerogative" doctrine.
If a particular subject is found to be a critical managerial decision which fundamentally impacts upon the functioning of an enterprise, then it is not a "term or condition" of employment and does not need to be mandatorily bargained. As stated in Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 425 So.2d 133, 137-38 (Fla. 1st DCA 1982), affirmed in part, reversed in part on other grounds, 475 So.2d 1221 (Fla. 1985):
[W]e acknowledge that certain decisions must be retained exclusively by management; that there are "those management decisions which are [so] fundamental to the basic direction of a corporate enterprise or [those] which impinge [so] ... indirectly upon employment security" as to require their exclusion from the area of mandatory bargaining. Fibreboard Paper Products Corp. v. National Labor Relations Board, 379 U.S. 203, 223, 85 S.Ct. 398, 410, 13 L.Ed.2d 233, 246 (1964)... . Our state has legislatively recognized the rights of a public employer to make decisions which are consistent with its purpose, including the rights "to direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons." Section 447.209, Florida Statutes.
And, even though a decision may affect the job security of employees, "it surely does *1323 not follow that every decision which may affect job security is a subject of compulsory collective bargaining." Fibreboard, 379 U.S. at 223, 85 S.Ct. at 409, 13 L.Ed.2d at 245 (Stewart, J., concurring).
No Florida case has adequately discussed the analysis to be utilized in determining whether a subject must be collectively bargained when that subject both directly relates to employment security or conditions of employment and also directly relates to the functioning of an enterprise. The search for an approach to define mandatory versus permissive categories in collective bargaining has engendered much confusion. See generally, Sackman, Redefining the Scope of Bargaining in Public Employment, 19 B.C.L.Rev. 155 (1977).[10] Where, as here, we are dealing with a subject which is arguably both a managerial prerogative and a "term or condition of employment," we hold that a balancing test should apply to determine which characteristic predominates.[11]
Our research reveals that many courts and labor boards have recognized that, in the absence of specific legislation delineating subjects of mandatory bargaining, the balancing test is the preferable mode of analysis in order to accomplish the delicate task of accommodating union and employer interests.[12] For example, in the case of First National Maintenance Corp. v. NLRB, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981), the Supreme Court applied *1324 a balancing analysis to the collective bargaining question and observed that:
[I]n view of an employer's need for unencumbered decisionmaking, bargaining over management decisions that have a substantial impact on the continued availability of employment should be required only if the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business.
First National Maintenance Corp., 452 U.S. at 679, 101 S.Ct. at 2581, 69 L.Ed.2d at 331. See also Fibreboard, 379 U.S. at 203, 85 S.Ct. at 398, 13 L.Ed.2d at 233 (Stewart, J., concurring) (balancing analysis; recognized different concerns of management and employees and that certain management decisions, even though affecting job security, are not within the scope of mandatory collective bargaining); Local 346, International Brotherhood of Police Officers v. Labor Relations Commission, 391 Mass. 429, 462 N.E.2d 96 (1984) (balancing analysis; town's interest in requiring police suspected of criminal activity to submit to polygraph tests was held to outweigh officers' interest in negotiating); Bay City Education Association v. Bay City Public Schools, 430 Mich. 370, 422 N.W.2d 504 (1988) (balancing analysis; school board's decision to terminate operation of special education center outweighed employee interest in negotiating); Pennsylvania Labor Relations Board v. State College Area School District, 461 Pa. 494, 337 A.2d 262 (1975) (balancing analysis applied to determination of what is within scope of mandatory bargaining). See generally Annot., Bargainable or Negotiable Issues in State Public Employment Labor Relations, 84 A.L.R.3d 242, § 3[b] (1978). And, while we recognize that in applying such a test it may be difficult to draw the line in ascertaining what items are mandatory subjects of negotiation, such a test is, in our opinion, the best method of ensuring that the public interest is accommodated in a case such as this which involves the safety of the public and thus implicates important public interest considerations beyond the interests of the union and employer.[13]
Thus, in order to determine whether the subject of drug testing is mandatory or permissive, we must balance the interests of the City and the public against the interests of the employee police officers. As stated by Justice Blackmun in First National Maintenance Corp., 452 U.S. at 678, 101 S.Ct. at 2580, 69 L.Ed.2d at 330, the rationale behind the concept of mandatory collective bargaining is to ensure "decisions that are better for both management and labor and for society as a whole." See also, Pennsylvania Labor Relations Board, 461 Pa. at 499, 337 A.2d at 267 (public interest in collective bargaining is the "effective and efficient operation of public employment"). Will submitting the subject of drug testing to the mandatory bargaining process result in decisions which are ultimately better for society as a whole, and which will result in the more effective and efficient operation of the police force? We think not.
It must be stressed that this case is not simply one which involves the average "public employee." Rather, we are dealing with a specific category of public employee  that of police officer  which is entrusted with the public safety and empowered with enforcing the law. Because police officers are responsible for the lives and *1325 safety of the citizenry, they occupy a position in which the public has a right to have absolute trust. The credibility of police officers is thus central to the operation of the police force as an enterprise. In the case of Newspaper Guild of Greater Philadelphia, Local 10 v. NLRB, 636 F.2d 550, 560 (D.C. Cir.1980), the court held that a newspaper's unilateral adoption of certain ethics code regulations fell within the newspaper employer's managerial prerogative and thus was not a mandatory subject of collective bargaining. The court premised its finding upon the fact that credibility and editorial integrity were matters at the "core of publishing control" and "central to [the newspaper's] ultimate product and to the conduct of the enterprise." Newspaper Guild of Greater Philadelphia, 636 F.2d at 560 (footnote omitted). The court stated that:
In order to preserve these qualities, a news publication must be free to establish without interference, reasonable rules designed to prevent its employees from engaging in activities which may directly compromise their standing as responsible journalists and that of the publication for which they work as a medium of integrity.
Id. at 561 (footnotes omitted). Certainly it is unquestionable that credibility and integrity are fundamental to the basic operation of a police force, and that the analysis utilized in Newspaper Guild is even more compelling under circumstances involving public employees entrusted with the public safety as compared to private employees working for a newspaper.
We further note that a drug impaired police officer not only poses the danger of failing to protect the public, he or she could in fact, endanger it. The reality of police work is that police officers come into frequent contact with illegal substances in the course of their duties. Thus, both the sources of temptation and the consequences of drug usage are greater for police officers than for other types of employees. The problems caused by, and the dangers created by police officers who are under the influence of illicit drugs are rather obvious. Police officers are empowered to make arrests and, under appropriate circumstances, use deadly force. Impairment of judgment induced by illegal drug usage presents the potential, if not strong probability, that the affected police officer may become involved in doing things which are contrary to the purposes of legitimate police work. The list of harmful, and possibly tragic, consequences that could result from the illicit use of drugs is potentially endless. Such a list would include, at the very least, the improper use of the officer's firearm, wrongful arrests made without legal justification (due to the officer's impaired judgment), the leaking of confidential information, the improper disclosure of confidential informants to criminals, being susceptible to bribery or blackmail, as well as the failure or inability of the impaired officer to properly and expeditiously provide "back-up" to his or her fellow officer. As stated by the Florida Supreme Court, "[police officers'] work requires and the safety of the public demands complete mental and physical functioning... . The City therefore has a right to insist that its law enforcers not be law breakers." City of Palm Bay v. Bauman, 475 So.2d 1322, 1326 (Fla. 1985).
The safety of the public depends upon the proper discharge of the police officers' duties. Those duties include the need to make split second decisions regarding life and death. Such decisions cannot be properly made if an officer is under the influence of a controlled substance which can cause "severe long and short term physical, mental and psychological effects" including "impairment of physical function, auditory and visual perception changes." City of Palm Bay, 475 So.2d at 1326. Thus, it is apparent that there is a direct connection between an officer's job duties and the public safety.
The City and the FOP both agree that the City has the right to require and demand a drug-free police force and, as we have noted, the public also has that right. These rights would be meaningless absent the ability to enforce them through an appropriate method of verification such as drug testing.
*1326 To label the drug testing issue as a mandatory subject of collective bargaining could hamper the City's and the citizenry's unquestioned right to a drug-free police force, thereby permitting to exist "a powerful tool for achieving delay, a power that might be used to thwart management's intentions in a manner unrelated to any feasible solution the union might propose." First National Maintenance Corp., 452 U.S. at 683, 101 S.Ct. at 2583, 69 L.Ed.2d at 334. Such delay could create costly and time-consuming obstacles to the ability of public employers to take action on behalf of the public. See Local 346, International Brotherhood of Police Officers, 391 Mass. at 435, 462 N.E.2d at 102 (recognizing possibility that, even though a decision may directly affect employment relationship, bargaining is not necessarily mandated where it would "unduly impinge on a public employer's freedom to perform its public functions"). Especially in the matter at hand, which involves the integrity of police officers, we find unacceptable the potential for delay which is inherent in a mandatory collective bargaining requirement and in the impasse process.
Taking all these factors into consideration, we find that the interests of the City and the public in ensuring the right to a drug-free police force outweigh the interests of the FOP in negotiation[14] and, accordingly, hold that drug testing of police officers is a critical managerial decision which fundamentally impacts upon the functioning of the police force and thus is excluded from the range of subjects which must be mandatorily bargained under Section 447.309, Florida Statutes (1983).[15]

III.
We next address the issue of whether mandatory collective bargaining is required by the right to work provision of the Florida Constitution. Article I, Section 6 of the Florida Constitution provides that:

*1327 The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.
(emphasis added).
The FOP correctly points out that the Florida Supreme Court has consistently held that, "with the exception of the right to strike, public employees have the same rights of collective bargaining as are granted private employees by Section 6" of the Florida Constitution. Dade County Classroom Teachers' Association, Inc. v. Ryan, 225 So.2d 903, 905 (Fla. 1969). See also Hillsborough County Governmental Employees Association, Inc. v. Hillsborough County Aviation Authority, 522 So.2d 358, 360 (Fla. 1988) (right to collectively bargain applies to public employees as well as to private employees); City of Tallahassee v. Public Employees Relations Commission, 410 So.2d 487, 490 (Fla. 1981) (collective bargaining rights of public employees are "commensurate" with those of private employees), affirming 393 So.2d 1147 (Fla. 1st DCA 1981). However, our supreme court has never stated that achieving equal collective bargaining rights in the public and private sectors is to be accomplished by providing that the scope of bargaining issues within each sector be identical. Equal rights do not necessarily mean identical rights. In fact, to the contrary, the Florida Supreme Court in United Teachers of Dade FEA/United AFT, Local 1974 v. Dade County School Board, 500 So.2d 508, 512 (Fla. 1986), specifically stated that:
Our holding in Ryan that "public employees have the same rights of collective bargaining as are granted private employees," 225 So.2d at 905, did not, however, mean that there exists [sic] no differences between public and private employee bargaining. Indeed, we recognized as much in City of Tallahassee by stating that "[i]t would be impractical to require that collective bargaining procedures ... be identical in the public and the private sectors." 410 So.2d at 491. Myriad distinctions, not just those of procedures, exist between public and private collective bargaining, and have been noted by the highest courts of several sister states. (emphasis added).
See also City of Tallahassee, 410 So.2d at 490-91 (collective bargaining process in public sector need not be identical to that in private sector). And, in the case of Pinellas County Police Benevolent Association v. Hillsborough County Aviation Authority, 347 So.2d 801, 803 (Fla. 2d DCA 1977) (footnote omitted), the Second District recognized that: "A public employee's constitutional right to bargain collectively is not and cannot be coextensive with an employee's right to so bargain in the private sector. Certain limitations on the former's right are necessarily involved." See also School Committee of Boston v. Boston Teachers Union, Local 66, American Federation of Teachers, 378 Mass. 65, 70, 389 N.E.2d 970, 973 (1979) ("It is by now well recognized that the subjects of public sector collective bargaining are more restricted than those in private sector labor relations."); Pennsylvania Labor Relations Board, 461 Pa. at 496, 337 A.2d at 264 (important distinctions exist between private and public sector employees).[16]
*1328 Having established that we are not constrained by those decisions dealing with drug testing in the private sector, we hold that, for the various policy reasons discussed below, the Florida Constitution does not require the City to bargain with the FOP union regarding the subject of drug testing of police officers.[17]
We have already discussed, in the previous section, our reasons for holding that drug testing of police officers is a managerial prerogative and thus not a mandatory subject of collective bargaining under Section 447.309, Florida Statutes (1983). That same rationale applies here. Our conclusion that drug testing of police officers is not a required subject of the collective bargaining process under the Florida Constitution is further supported by our recognition that different considerations apply to an analysis of the scope of mandatory collective bargaining in public employment as opposed to private employment. See Summers, Public Employee Bargaining: A Political Perspective, 83 Yale L.J. 1156 (1969). As noted by Professor Summers, the "employers" in public employment collective bargaining are public officials. These public officials are accountable to the voters who in essence then are the true "employers." As a result, public employment collective bargaining is influenced primarily by political forces as opposed to private employment collective bargaining which is essentially shaped by the market. Id. See also Abood v. Detroit Board of Education, 431 U.S. 209, 227-28, 97 S.Ct. 1782, 1795-96, 52 L.Ed.2d 261, 279-80 (1977) (public employer decisionmaking is guided by politics; it is not guided by the profit motive).
The public employee, as a voter, has the ability to participate in determining what the scope of mandatory bargaining should be through normal political processes. Private employees do not have such ability. Thus, Summers suggests that, because public sector employees already have a larger voice in deciding the scope of mandatory bargaining than private sector employees, the duty to bargain should extend only to decisions where the interests of the voting public as a whole run counter to the employees' interests in increased wages and reduced work load. Otherwise, where the interests of the public and the public employee are aligned, mandatory collective bargaining results in providing the public employee greater input into the political decisionmaking processes than other interest groups thus violating fundamental democratic principles.[18] In this situation, the public employees "certainly have a right to participate in [the] decision, but only through the ordinary avenues of the political process which are equally open to all competing views and interest groups." Summers, Public Employee Bargaining: *1329 A Political Perspective, 85 Yale L.J. 1156, 1197 (1969).
Thus, in order to give public employees a sufficient say in decisions impacting upon their employment, a subject should be required to be bargained only where the interests of the public and the interests of the public employee are adverse. In the case at bar, the FOP/employees have acknowledged that they have the same interest in a drug-free police force as the City/public/employers. Accordingly, the interests of the FOP are already being taken into account by the City/employer and there is no need to require collective bargaining to ensure a full discussion and review of the subject.
Such reasoning strengthens our conclusion that requiring bargaining over drug testing of police officers would represent an intrusion into that type of decision which should be made by the elected representatives of the general public  the City  rather than by the employees  the police  who have been hired to protect the public. See Town of Danvers and Local 2038, IAFF, 3 MLC 1559, 1573 (Mass. 1977) (fire department shift staffing proposal not mandatory; to require bargaining would interfere with flexibility of elected officials and represent "an intrusion into that type of governmental decision which should be reserved for the sole discretion of the elected representatives").

IV.
We are not unmindful of the concern expressed by the FOP, on behalf of its members, concerning the efficacy and reliability of whatever particular type of testing equipment might be used by the City. Understandably, FOP voices concern that the testing of a police officer might result in a "positive" reading when, in fact, the particular officer may not have been involved in the illicit use of drugs. In this regard, however, the interests of the FOP and the City are aligned. While the City certainly desires to ferret out police officers involved in the illegal use of drugs, the City obviously also has a vested interest in protecting, and keeping on the department, good police officers who are not involved in the illegal use of drugs. Consequently, the City has a strong incentive to use the most reliable equipment and procedures to implement its drug testing policy so as to avoid the possibility of inaccurate test results that might interfere with the proper functioning of those good police officers who make up the overwhelming majority of the police force.
Additionally, it should be noted that in the event of a positive test result, there are important administrative safeguards which afford the officer an opportunity to challenge and rebut the accuracy of the testing procedures and results. Accordingly, a police officer who becomes the subject of disciplinary proceedings as a result of a positive test result will have the benefit of all of the due process protections afforded such persons by Florida statutory and decisional law. Just as a person charged with the offense of "Driving Under the Influence" is able to challenge the accuracy of the breathalyzer equipment, as well as the competency of its operator, so too will a police officer have ample opportunity, in the appropriate forum, to challenge the accuracy of the testing equipment and the competency of its operator.
In conclusion, we believe that the subject of drug testing of police officers is a managerial prerogative and, thus, is not a subject of mandatory collective bargaining. Accordingly, we reverse.
Reversed.
SCHWARTZ, C.J., and BARKDULL, NESBITT, FERGUSON and COPE, JJ., concur.
COPE, Judge (specially concurring).
I join the majority opinion. The issue before us is a narrow one: the latitude available to management to investigate specific allegations of drug use by police officers. Traditionally management has investigated such allegations; the only change is the method of investigation employed. I concur with the majority's analysis of that issue. The question of drug testing in a "non-cause" context, such as random drug testing or drug testing as a *1330 part of required physical examinations, is not developed by the record and not presently before us.
HUBBART, Judge (dissenting).
For the reasons stated by Judge Daniel Pearson in his thorough and able opinion for the three-judge panel which originally heard this case, I respectfully dissent from the majority's en banc decision today. In my view, Judge Pearson's legal analysis cogently demonstrates that compulsory drug testing of City of Miami police officers is a subject of mandatory collective bargaining between the City of Miami and the union which represents the police officers. Moreover, I agree entirely with that portion of Judge Jorgenson's partial dissent which argues, persuasively I think, that drug testing is fraught with scientific dangers, and that City of Miami police officers through their union should, at the very least, be permitted to collectively bargain on the implementation procedures of any mandatory drug testing program.
I acknowledge that Judge Levy's outstanding en banc opinion makes the best possible legal case for a contrary result. Ultimately, however, I am not persuaded thereby not only because of the legal reasons expressed by Judge Pearson and Judge Jorgenson, but also because of a simple principle of fairness and justice. It does not strike me as fair that the City of Miami should have the unfettered authority, as today's decision holds, to impose on its police officers whatever mandatory drug testing program that it sees fit  no matter how unreliable, arbitrary, or uncivilized the program may be. I recognize that the nation is presently engaged in a commendable war on drugs, but I am unpersuaded that this great public policy objective justifies plowing under the collective bargaining rights of public employees in the workplace.
BASKIN, Judge (dissenting).
The majority opinion resurrects the long-buried Hamiltonian view that government is too important to be left to the governed. Mindful of Thomas Jefferson's declaration that governments derive "their just powers from the consent of the governed," Declaration of Independence (U.S. 1776), I disagree.
The issue is not whether drug testing is good: the issue is whether drug testing is subject to collective bargaining. The legislature has mandated collective bargaining of employment terms and conditions; consequently, the majority's substitution of a balancing test is foreclosed.
If the efficacy of drug testing is to be evaluated, there is no reason to exclude police from the decisional process. They put their lives in daily jeopardy to protect the public from the scourge of criminal behavior fostered by illicit drugs. On the contrary, there is every reason to assume that most of those civil servants are concerned citizens who seek to promote the general welfare as well as their own safety. I would therefore abide by this court's original decision to require collective bargaining between the city and the union.
JORGENSON, Judge, concurring in part and dissenting in part.
I agree with the court that the compulsory drug testing of police officers employed by a city is not a subject of mandatory collective bargaining between the city and the union which represents the officers. However, I depart from the majority to the extent that the opinion can be interpreted also to remove from mandatory collective bargaining the issue of how the drug testing program is to be implemented.
This is one of those rare cases where the interests of both appellant and appellee are identical. Both the City and the officers' union strive for a drug-free police force. However, the union's central concern here is the method of drug testing employed. The court does not address this critical issue. Moreover, I believe that the controversy presented by this case is now moot. While I agree with the court that "the issues presented involved a matter of great public interest ... and are likely to recur," see supra n. 7, it is my view that in its current procedural posture this case is no longer viable. In its order, the Public Employees *1331 Relations Commission stated that the City was bargaining with F.O.P. over this very issue. During the en banc oral argument, counsel for the City again indicated that the City was currently bargaining over this issue. The central issue here is whether the parties have the duty to bargain over compulsory drug testing. Because they are actually bargaining over precisely that practice, I believe the case is moot. Nevertheless, because the court decides this appeal on the merits, I am compelled to write separately.
In my view, the issue of how mandatory drug testing should be implemented is a subject of mandatory collective bargaining because it involves the determination of terms and conditions of employment as set forth in section 447.309(1), Florida Statutes (1985). The policy amounts to a change in rules "affecting or impacting upon, employment or a condition of employment." Board of County Comm'rs v. Central Florida Professional Fire Fighters Ass'n, 467 So.2d 1023, 1026 (Fla. 5th DCA 1985). The issue is one which "settle[s] an aspect of the relationship between the employer and employees." City of Orlando v. Florida Public Employees Relations Comm'n, 435 So.2d 275, 278-279 (Fla. 5th DCA) (quoting Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971)), rev. denied, 443 So.2d 980 (Fla. 1983). Specifically, the implementation of mandatory drug testing relates to "demotion and discharge, including the definition of `cause' for discharge, [which] are mandatory subjects of collective bargaining which the parties are obligated to negotiate in good faith ..." Orange County Police Benevolent Ass'n v. City of Casselberry, 457 So.2d 1125, 1128 (Fla. 1st DCA 1984), aff'd in part, reversed in part, 482 So.2d 336 (Fla. 1986).
The goal of mandatory drug testing is to eliminate from the police department the use of unlawful drugs. Officers who test positive for such drugs would be subject to discipline, suffer disapprobation of fellow officers, and be in danger of demotion, suspension, or, ultimately, discharge. "The reliability and accuracy of the analytical methods that the employer selects are critical aspects of the program [of employee drug tests] because employers will ordinarily take adverse action against employees who have tested positive for illegal drug use." Survey of the Law on Employee Drug Testing, 42 U.Miami L.Rev. 562, 562-563 (1988).
Fundamental decisions regarding the officers' continued employment rest upon the outcome of the drug tests, some of which are notorious for producing false positive results.[1]See generally Miike and Hewitt, Accuracy and Reliability of Urine Drug Tests, 36 Kansas L.Rev. 641 (1988). For example, positive tests can result from passively inhaling marijuana smoke, drinking herbal teas, or even eating poppy seeds. Id. at 648. Ingestion of various legal drugs, including aspirin and cold remedies, can also lead to false positive results. 42 U.Miami L.Rev. at 564 n. 51. The quality and reliability of the laboratories selected to conduct the drug testing and the methods used by those laboratories are therefore crucial to ensure the accuracy of the test results and fairness to the officers tested. "The insidious and unfair impacts of false positive test results upon employees is a matter for great concern. The likelihood of false positive results is now a matter of common knowledge in the labor relations community." City of New Haven & New Haven Police Union Local #530, No. 2554-A slip op. at 15 (Conn.State Bd. of Lab.Rel., May 28, 1987). The officers, through their union, should be afforded the right to participate in deciding which laboratories and which testing techniques are used.[2] The union's participation is necessary to ensure that the officers' futures do not rest upon test results announced by a *1332 laboratory chosen simply because it submitted to the City the lowest bid for the testing contract.
Employees have an obvious vital interest in being able to bargain for procedures that will reduce or eliminate the likelihood of false positive results. This would include, for instance, how many tests a sample will be subjected to, the types of tests the sample is subjected to, the laboratory to be used for testing, and the source and handling of sample containers, including chain of custody requirements. One possible management consideration, although a less than responsible one, is to seek cheaper and fewer tests, as well as bargain basement prices when choosing a laboratory to reduce testing costs. The underlying issue here would be the competition between employer costs on the one hand and unfair harm to employees on the other. This is an issue which deeply impinges upon conditions of employment and lends itself readily to the collective bargaining process.
City of New Haven, slip op. at 15-16.
The court suggests that certain administrative safeguards would afford victims of false positive results the opportunity to challenge the accuracy of the testing procedures. That analysis simply skirts the issue here. The union seeks to participate in the implementation of the testing program to ensure at the outset that no officer ever has to defend himself or herself against false accusations of illegal drug use simply because an inferior lab was chosen or poor testing techniques were used.
Allowing participation by the union in the selection of the method used to implement mandatory drug testing will not impinge upon the City's right to require such testing. In its order, the Public Employees Relation Commission determined that mandatory drug testing is a subject over which the City was required to bargain. That determination is entitled to great deference as the Commission's designated area of expertise lies in determining the issues over which public employers must bargain with their employees. See Public Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987 (Fla. 1985) (Public Employees Relations Commission has principal responsibility of interpreting statutory provisions of Public Employees Relations Act; reviewing court must defer to that agency's interpretation if consistent with legislative intent and supported by substantial, competent evidence).
Although the court purports to recognize the principle that decisions of the Public Employees Relations Commission are entitled to great deference, the court pays mere lip service to the Commission's determination here.
I agree with the court that the strong public policy considerations here gave the City the absolute right to require the immediate drug testing of the officers; however, I must agree with the Public Employees Relations Commission that the implementation of mandatory drug testing of all officers is properly the subject of an enforceable collective bargaining agreement. See, e.g., School Committee of Newton v. Labor Relations Comm'n, 388 Mass. 557, 447 N.E.2d 1201 (1983) (while decision to reduce janitorial force was management decision, means of achieving that reduction was subject of mandatory collective bargaining); San Juan Teachers Ass'n v. San Juan Unified School Dist., 44 Cal. App.3d 232, 118 Cal. Rptr. 662 (1974) (while creation of counseling program a management decision, implementation of program affected employment conditions of teaching staff and was therefore subject of mandatory collective bargaining); West Hartford Educ. Ass'n v. De Courcy, 162 Conn. 566, 295 A.2d 526 (1972) (whether extracurricular activities should take place was management decision; effect of those activities on teacher assignments mandatory subject of negotiation).
The court assumes that collective bargaining over implementation of drug testing is not necessary because the City Fathers, the employers here, have the union's best interests at heart. That questionable assumption neither cures nor prevents any evils and the court should not add its blessing to such a paternalistic assumption.
*1333 In conclusion, I would hold that the City commits an unfair labor practice in refusing to bargain over the implementation of mandatory drug testing.
GERSTEN, Judge, I respectfully concur in part and dissent in part.
I agree with Judge Jorgenson's opinion (concurring in part and dissenting in part, from the majority opinion). I write separately, merely to emphasize that lest we make a mountain from a mole hill, turning this into a complex matter, the issue is quite simple. Should the F.O.P. have input, through collective bargaining, in the methodology of drug testing used in screening police officers? I say yes. I say a resounding yes that this is a matter for collective bargaining.
The majority condones the City of Miami's unilateral set up, procedure, timing, and the general methodology of the drug testing of its police officers. Yet, as pointed out in Judge Jorgenson's opinion, drug tests are infamous for "producing false positive results." Drug tests are not as simple as determining specific gravity, or, ascertaining the boiling point of water. There is room for error.
Thus, with officers' careers on the line, the F.O.P. should have some input, through collective bargaining, on how the drug testing of police officers should be conducted. That is what this case is all about.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE, LEVY and GERSTEN, JJ.

ON APPELLEE, F.O.P., MIAMI LODGE 20's MOTION TO CERTIFY QUESTION OF GREAT PUBLIC IMPORTANCE
PER CURIAM.
The motion of the Appellee, F.O.P., Miami Lodge 20, to certify the question presented herein, which involves the compulsory drug testing of police officers, as one involving "a question of great public importance" is granted. Accordingly, we certify the following question as being one of great public importance:
AS PRESENTED BY THE FACTS IN THIS CASE, IS THE COMPULSORY DRUG TESTING OF POLICE OFFICERS A MANDATORY SUBJECT OF COLLECTIVE BARGAINING OR, IN THE ALTERNATIVE, MAY A GOVERNMENTAL ENTITY REQUIRE ITS POLICE OFFICERS TO SUBMIT TO DRUG TESTING WITHOUT HAVING FIRST ENTERED INTO COLLECTIVE BARGAINING REGARDING THE SUBJECT?
SCHWARTZ, C.J., and BARKDULL, NESBITT, BASKIN, FERGUSON, COPE and LEVY, JJ., concur.
JORGENSON, Judge, concurring in part and dissenting in part.
I agree that this case presents a question of great public importance. However, in my view, the question posed by the court does not reflect the issues presented by this case. I would certify the following question:
MAY A GOVERNMENTAL ENTITY REQUIRE ITS POLICE OFFICERS TO SUBMIT TO DRUG TESTING WITHOUT HAVING FIRST ENTERED INTO COLLECTIVE BARGAINING OVER THE SUBJECT OR, IN THE ALTERNATIVE, IF DRUG TESTING MAY BE REQUIRED WITHOUT SUCH COLLECTIVE BARGAINING, MUST THE MEANS USED TO IMPLEMENT THAT TESTING BE SUBJECT TO COLLECTIVE BARGAINING?
HUBBART and GERSTEN, JJ., concur.
NOTES
[1] See, e.g., City of Palm Bay v. Bauman, 475 So.2d 1322 (Fla. 5th DCA 1985); Policeman's Benevolent Association v. Township of Washington, 850 F.2d 133 (3d Cir.1988), petition for cert. filed, 490 U.S. 1004, 109 S.Ct. 1004, 104 L.Ed.2d 153 (U.S. 1988); Penny v. Kennedy, 846 F.2d 1563, vacated and rehearing en banc granted, 862 F.2d 567 (6th Cir.1988); Caruso v. Ward, 72 N.Y.2d 432, 530 N.E.2d 850, 534 N.Y.S.2d 142 (1988). Cf. Fowler v. Unemployment Appeals Commission, 537 So.2d 162 (Fla. 5th DCA 1989) (sheriff's department may require dispatcher to submit to drug test if request is based on reasonable suspicion; failure to submit is "misconduct" for unemployment compensation purposes).
[2] See, e.g., Railway Labor Executives' Association v. Consolidated Rail Corp., 845 F.2d 1187, 1188 (3d Cir.), cert. granted, 488 U.S. 815, 109 S.Ct. 52, 102 L.Ed.2d 31 (1988). See generally Dunham, Lewis & Alpert, Law Enforcement: Testing the Police for Drugs, 24 Crim.L.Bull. 155 (1988) (suggesting alternatives to drug testing); Symposium, Testing for Drug Use in the American Workplace, 11 Nova L.Rev. 291-890 (1987).
[3] The alleged cocaine user submitted to the test after his dismissal.
[4] Section 447.501 provides:

"Unfair labor practices. 
"(1) Public employers or their agents or representatives are prohibited from:
"(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
... .
"(c) Refusing to bargain collectively, failing to bargain collectively in good faith, or refusing to sign a final agreement agreed upon with the certified bargaining agent for the public employees in the bargaining unit."
[5] Collective bargaining rights of public employees should be broadly interpreted for another reason: the rights exist not simply for the benefit of the employees, but also to encourage labor peace. As stated in Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 425 So.2d at 140, "the stability to be encouraged in the bargaining relationship between public employer and employee requires the parties to conduct negotiations over a broad range of subjects... ."
[6] Florida courts have often relied on federal precedent to define "terms and conditions of employment," as the National Labor Relations Act [NLRA] contains identical language. See City of Orlando v. Public Employees Relations Commission, 435 So.2d at 278 n. 5 (where Florida statute is patterned after federal law, Florida courts will use same construction as federal courts, so long as construction is consistent with spirit and policy of Florida law); Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 475 So.2d 1121, 1125 (Fla. 1985) (federal decision persuasive but not binding authority for judicial interpretation of PERA); Orange County Police Benevolent Association v. City of Casselberry, 457 So.2d at 1227 n. 4 (federal decisions construing NLRA are persuasive authority to the extent Chapter 447 and NLRA are analogous).
[7] Moreover, even a balancing test would not lead inexorably to the conclusion that drug testing need not be submitted to collective bargaining. In a case involving the drug testing of police officers, the Connecticut Board of Labor Relations concluded that a unilateral decision by a public employer is subject to mandatory collective bargaining when "the issue's impact on conditions of employment ... outweigh[ed] the employer's need for unilateral action without the encumbrance of bargaining." City of New Haven v. New Haven Police Local 530, No. 2554-A, slip op. at 10 (Conn.St.Bd. of Lab.Rel. May 28, 1987). The board reviewed the various factors, including the effectiveness and efficiency of urinalysis testing in detecting impairment or illegal drug use by police officers, and concluded that under the balancing test, the impact of mandatory drug testing on police officers' conditions of employment outweighed the police department's need to act unilaterally. Id., slip op. at 17. Indeed, the interest in harmonious labor relations  a factor in the balancing calculus  may often outweigh the employer's need to act unilaterally. As a Florida court has stated, "[r]epresentatives of the public employer and the union should and must be able to sit down together and negotiate an agreement which will be beneficial and fair to all parties. There is too much at stake to play games. Idealistic? Perhaps. Too much to ask? We think not." Duval County School Board v. Florida Public Employees Relations Commission, 353 So.2d 1244, 1249 (Fla. 1st DCA 1978).
[8] The only disagreement in these cases has been whether, under the nomenclature of the Railway Labor Act, the dispute over drug testing is "major" or "minor."
[9] At issue in United Teachers of Dade v. Dade County School Board, 500 So.2d 508, was a master teacher program which provided incentives to teachers who performed well. The supreme court, after noting the differences between public employee bargaining and private employee bargaining, stated that the case demonstrated that "some issues arising in the public employment arena would not arise in the private sector... . What we have before us is simply a unique situation." 500 So.2d at 512. Quite apart from its uniqueness, it should also be noted that the court did not find that such a program would be subject to collective bargaining for private employees but not for public employees. United Teachers is of little help to the City.
[10] We are informed that in a collective bargaining agreement entered on April 9, 1986, the City and FOP agreed to a drug testing program. See City of Miami Resolution 86-230 (March 27, 1986). We take judicial notice of this agreement, which is in the form of a city resolution.

A city resolution may be judicially noticed, see § 90.202(10), Fla. Stat., even if the request for notice is first made on appeal, see M. Graham, Handbook of Florida Evidence § 207.1, at 80 (1987) ("Appellate courts can take judicial notice of sources both of applicable law and adjudicative facts."); 1 C. Ehrhardt, Florida Evidence § 207.2, at 58 (2d ed. 1984) ("The matters that can be noticed, which are set forth in Sections 90.201 and 90.202, should define the appropriate matters of judicial notice at both the trial and appellate levels."); S. Gard, Florida Evidence § 2:23, at 54 (2d ed. 1980) (Section 90.207 recognizes "the power of an appellate court to take judicial notice of vital facts relevant to review where notice was not taken in the court below."). We recognize that the First District has stated that the Florida Evidence Code does not apply to appellate proceedings, Hillsborough County Board of County Commissioners v. Public Employees Relations Commission, 424 So.2d 132, 134 (Fla. 1st DCA 1982), but the correctness of this statement is debatable. See 1 C. Ehrhardt, supra § 207.2, at 58 n. 7 ("The decision is unwise and should not be followed as precedent."); M. Graham, supra § 207.1, at 81 n. 4 ("The court's statement that the Florida Evidence Code does not apply to appellate proceedings is dictum that should not be followed.").
In any event, the resolution noting the new collective bargaining agreement has absolutely no effect on the outcome of this case. We take judicial notice of the resolution simply to demonstrate what is obvious even without the resolution: that employers and employees can mutually agree to the institution of a drug testing program. See City of Oakland v. United Public Employees, 179 Cal. App.3d 356, 224 Cal. Rptr. 523 (1986) (appellate court takes judicial notice of resolution which did not affect determination of case).
[1] While other recent decisions have dealt with the constitutionality of drug testing for police officers under the Fourth Amendment, see, e.g., Guiney v. Roache, 873 F.2d 1557 (1st Cir.), cert. denied, ___ U.S. ___, 110 S.Ct. 404, 107 L.Ed.2d 370 (1989) (Fourth Amendment not violated by random testing of police officers who carry firearms or participate in drug interdiction); Policemen's Benevolent Association of New Jersey, Local 318 v. Township of Washington (Gloucester County), 850 F.2d 133 (3rd Cir.1988) (Fourth Amendment not violated by random testing of police officers), cert. denied, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989); Brown v. City of Detroit, 715 F. Supp. 832 (E.D.Mich. 1989) (drug testing program for police officers did not facially violate the Fourth Amendment); Weicks v. New Orleans Police Department, 706 F. Supp. 453 (E.D.La. 1988) (urinalysis drug testing program for police officers did not violate the Fourth Amendment), affirmed, 868 F.2d 1269 (5th Cir.1989), we note that Constitutional questions, involving Fourth Amendment search and seizure issues, have not been raised in this case and, accordingly, are not addressed herein.
[2] The rehearing in this case was heard by the Court en banc pursuant to the "MOTION FOR REHEARING EN BANC" that was filed by the appellant, City of Miami, Florida. The said motion was filed in connection with the Opinion of this Court, filed January 31, 1989. That Opinion held that drug testing of police officers was a subject of mandatory collective bargaining.
[3] After being relieved of duty, the officer allegedly submitted to a urinalysis test administered by his own physician. The Department Disciplinary Review Board eventually recommended that the officer forfeit 120 hours of earned overtime as a penalty for his disobedience to the order.
[4] The results of the tests on these two officers have not been released pending the outcome of this litigation. Neither of the officers was disciplined, and both remain on active duty.
[5] Section 447.501 provides:

Unfair labor practices. 
(1) Public employers or their agents or representatives are prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
... .
(c) Refusing to bargain collectively, failing to bargain collectively in good faith, or refusing to sign a final agreement agreed upon with the certified bargaining agent for the public employees in the bargaining unit.
[6] Because we find that the union did not have the right to bargain over drug testing, we need not address the City's claim that the union waived any such right based on Article 4 of the collective bargaining agreement between the City and FOP, which provides that the City has "the right to operate and manage its affairs in all respects," and that these rights include the right "to establish, implement and maintain an effective internal security program" and the right to "suspend, demote, discharge, or take other disciplinary action against employees for proper cause."
[7] In the dissenting portion of Judge Jorgenson's opinion, he suggests that the controversy presented by this case is now moot due to the fact that the City indicated at the en banc oral argument that, subsequent to the initiation of this litigation, the City has bargained with the FOP over this issue. However, an appellate court does not lose jurisdiction of a cause because of mootness where the issues presented involve a matter of great public interest in the administration of the law and are likely to recur. Nichols v. Nichols, 519 So.2d 620 (Fla. 1988); Holly v. Auld, 450 So.2d 217 (Fla. 1984); In re Byrne, 402 So.2d 383 (Fla. 1981); Walker v. Pendarvis, 132 So.2d 186 (Fla. 1961); Clark v. State ex rel. Rubin, 122 So.2d 807 (Fla. 3d DCA 1960). Therefore, because this case poses a question of important public interest regarding public officials and because the issues presented herein are likely to recur each time the parties bargain over a new employment contract, we have jurisdiction.
[8] Section 447.403(4)(d) specifically states that, after impasse has been reached, "the legislative body shall take such action as it deems to be in the public interest, including the interest of the public employees involved, to resolve all disputed impasse issues."
[9] Florida has legislatively recognized that there are certain prerogatives granted to management in Section 447.209, Florida Statutes (1983), which provides:

Public employer's rights.  It is the right of the public employer to determine unilaterally the purpose of each of its constituent agencies, set standards of services to be offered to the public, and exercise control and discretion over its organization and operations. It is also the right of the public employer to direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons.
[10] The author notes that courts have generally utilized one of three approaches to analyze the mandatory/permissive question and to compare the impact of an issue on conditions of employment with its impact upon managerial prerogatives. The "significant relationship" test focuses upon whether an issue bears "a significant relationship to wages, hours, and other conditions of employment, despite elements of managerial policy... ." Sackman, Redefining the Scope of Bargaining in Public Employment, 19 B.C.L.Rev. at 176-77. The "balancing test" weighs the employer and employee interests in order to determine whether an issue is mandatory. Finally, the "material relationship test" provides that any matter not "materially related" or "directly affecting" working conditions is permissive and thus excluded from mandatory bargaining. Id. at 178.
[11] We recognize that there are those who would argue that the balancing test is an inappropriate method for determining whether a matter must be submitted to collective bargaining, citing to School Board v. Indian River County Education Association, 373 So.2d 412 (Fla. 4th DCA 1979) in support of this proposition. In School Board, a teachers' union challenged the school board's unilateral alteration of the number of periods into which the school day was to be divided. In holding that the new policy had to be collectively bargained, the court stated that the subject fell within the language in Section 447.309(1), Florida Statutes (1977) as involving a change in "wages, hours, and terms and conditions of employment," even though it "may not be a change of great moment." However, in the School Board case, the school board employer had conceded that the subject of the new policy was bargainable. School Board, 373 So.2d at 413, 414 ("[a]ppellant concedes the issue was bargainable" and "[a]ppellant has never contended the subject was not one for bargaining"). The Second District was not faced with the question of whether the new policy was a mandatory as opposed to a permissive subject of collective bargaining and thus the court was not concerned with the managerial prerogative doctrine. That case, therefore, cannot provide the basis for a conclusion that the balancing test is inappropriate in Florida.
[12] See generally, Sackman, Redefining the Scope of Bargaining in Public Employment, 19 B.C.L. Rev. at 187, where the author notes that there has been a trend in legislative, administrative and judicial bodies toward applying a balancing analysis in public sector bargaining issues. The author states that the movement toward balancing the public and public employer interests against public employee interests "reflects growing awareness that public policy issues must be preserved for an accountable decision by the employer either to resolve the issue unilaterally or to agree to permissive bargaining." Id. at 187.

For a more thorough discussion on the emergence of the balancing test as the preferable method by which to determine whether a subject is mandatory as opposed to permissive, see Clark, "The Scope of the Duty to Bargain in Public Employment," in Labor Relations Law in the Public Sector 81 (1977). The author notes that:
The balancing test utilized by an increasing number of PERBs and courts to resolve the conflict/overlap problem acknowledges that both parties have significant interests at stake and that these competing interests should be balanced to determine how a proposed subject for negotiations should be classified. Moreover, the balancing approach is well suited to a case by case determination of negotiability because it does not begin with a bias towards negotiability.
Id. at 94-95 (footnotes omitted).
[13] The Pennsylvania supreme court in Pennsylvania Labor Relations Board, 461 Pa. at 500, 337 A.2d at 268, was faced with the question of how to distinguish between areas of managerial prerogative and areas of vital concern to employees in the public sector, and determined that a balancing test was the best approach. The court stated that: "It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe [sic] in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole." Id. The court further noted that in applying the balancing test to the public sector, "the paramount concern must be the public interest in providing for the effective and efficient performance of the public service in question." Id.

See infra pp. 1324-1326 for a discussion of the difference between public and private sector collective bargaining. See also West Hartford Education Association v. DeCourcy, 162 Conn. 566, 575, 295 A.2d 526, 535 (1972) (managerial prerogative doctrine has "a special kind of vitality in the public sector.").
[14] The California First District Court of Appeal in analyzing its statute which requires bargaining over "wages, hours, and other terms and conditions of employment" held that the city's establishment of police department policies regarding investigation of citizen complaints of police officers did not constitute a "condition of employment." Berkeley Police Association v. City of Berkeley, 76 Cal. App.3d 931, 143 Cal. Rptr. 255 (1977). The court stated that the policies, which concerned a matter of police-community relations, "clearly constitute management level decisions which are not properly within the scope of union representation and collective bargaining." Berkeley Police Association, 76 Cal. App.3d at 937, 143 Cal. Rptr. at 260. According to the court, to find otherwise would place "an intolerable burden upon fair and efficient administration of state and local government." Id.
[15] While we recognize that other federal cases involving the National Labor Relations Act [NLRA] have held that drug testing is a subject of mandatory collective bargaining, see, e.g., Johnson-Bateman Company, 295 NLRB No. 26 (1989), we believe those cases are inapplicable here, and, for the various policy reasons discussed throughout this opinion, would not be followed by our Florida Supreme Court. Although it is true that Florida courts have often relied on federal precedent to define "terms and conditions of employment," we find the NLRA cases to be inapplicable because they all involved private employees as opposed to the public employees which our case involves. See West Irondequoit Teachers Association v. Helsby, 35 N.Y.2d 46, 50, 315 N.E.2d 775, 777, 358 N.Y.S.2d 720, 722 (1974) (NLRB and federal court cases "not especially persuasive except [to] suggest [] that there is an area of non-negotiable policy making left to the employer."); Pennsylvania Labor Relations Board, 461 Pa. at 496, 337 A.2d at 264 (NLRB decisions and federal decisions interpreting NLRA have limited application in analyzing public sector bargaining questions). We further note that our courts have not used the same construction as have federal courts where the federal courts' construction has been found to be inconsistent with the spirit and policy of Florida law. City of Orlando, 435 So.2d at 278, n. 5. See also Palm Beach Junior College Board of Trustees, 475 So.2d at 1225 (federal decision persuasive but not binding authority for judicial interpretation of PERA); Orange County Police Benevolent Association, 457 So.2d at 1127 n. 4 (federal decisions construing NLRA are persuasive authority).

We recognize that in City of New Haven and New Haven Police Local 530 and Counsel 15, AFSCME, No. 2554-A (Conn.St.Bd. of Lab.Rel. May 28, 1987), the board applied a balancing test in analyzing the issue of whether drug testing of police officers must be submitted to collective bargaining and held that the impact of drug testing on the individual police officers outweighed the City's need for unilateral action. The board's decision is not binding upon this court, and we strongly disagree with the reasoning used by the board in reaching its result.
[16] In discussing the applicability of cases involving the National Labor Relations Board and federal decisions interpreting section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158 (d), the Pennsylvania Supreme Court, in Pennsylvania Labor Relations Board, 461 Pa. at 496-97, 337 A.2d at 264-65 (footnotes omitted) (emphasis added), noted that:

Although these decisions may provide some guidance, we are mindful of the distinctions that necessarily must exist between legislation primarily directed to the private sector and that for public employes [sic]. The distinction between the public and private sector cannot be minimized. Employers in the private sector are motivated by the profit to be returned from the enterprise whereas public employers are custodians of public funds and mandated to perform governmental functions as economically and effectively as possible. The employer in the private sector is constrained only by investors who are most concerned with the return for their investment whereas the public employer must adhere to the statutory enactments which control the operation of the enterprise. We emphasize that we are not suggesting that the experience gained in the private sector is of no value here, rather we are stressing that analogies have limited application and the experiences gained in the private employment sector will not necessarily provide an infallible basis for a monolithic model for public employment.
[17] We recognize that the right to bargain is a fundamental right guaranteed to public employees by the Florida Constitution and as such requires a showing of special circumstances or a compelling state interest to justify its abridgement. Hillsborough County Governmental Employees Association, Inc., 522 So.2d at 362. However, the right to bargain has never been defined as encompassing all subjects within the scope of bargaining. This is a function left to the courts to determine on a case by case basis. Because there is no fundamental right to bargain over the subject of drug testing of police officers, we do not need to apply the strict-scrutiny standard in our analysis of whether the City is required to bargain over drug testing of police officers.
[18] In H. Wellington & R. Winter, The Unions and the Cities, 21-32 (1971), the authors note that expansion of the subjects of bargaining in the public sector results in an increase in the unions' aggregate bargaining power. One of the reasons this is so, is because the public cannot translate public employer demands into demands on the public treasury and thus will not resist such demands to the extent private sector employers might.

Accordingly, the authors conclude that to fully translate private sector collective bargaining rights to the public sector would result in "institutionaliz[ing] the power of public employee unions in a way that would leave competing groups in the political process at a permanent and substantial disadvantage." Id. at 30.
[1] Selection of a reliable laboratory and accurate testing methods is also crucial to guard against false negative results. Both the city and the union should be concerned that the drug testing accomplish its goal of eradicating drug abuse by the police force.
[2] The city should also be required to bargain over the issue of how the officers' privacy should be safeguarded throughout the testing and by what means confidentiality of the test results is ensured until those results are confirmed.